168 N.J. Super. 434 (1979)
403 A.2d 69
SAMUEL E. OUGHTON AND JEANNETTA W. KEYSER, PLAINTIFFS,
v.
BOARD OF FIRE COMMISSIONERS, FIRE DISTRICT NO. 1, MOORESTOWN TOWNSHIP, COUNTY OF BURLINGTON, GEORGE W. HUMPFER, JR., ARTHUR J. COLLINS, III, EDWIN R. JONES, C. BAREY MIDDLETON AND EDWIN L. PLASKETT, MEMBERS OF THE BOARD, DEFENDANTS, AND DOVER TOWNSHIP FIRE COMMISSIONERS, INTERVENOR.
Superior Court of New Jersey, Law Division.
Decided May 7, 1979.
*437 Ms. Mary Anne Polk O'Meara and Mr. John A. Rank, III, for plaintiffs.
*438 Mr. Richard E. Gehret for defendant Moorestown Township, Board of Fire Commissioners, Fire District No. 1 (Messrs. Parker, McCay & Criscuolo, attorneys).
Mr. Laurence A. Hecker for intervenor Dover Township Fire Commissioners and for New Jersey State Association of Fire Districts, appearing amici curiae.
Mr. Richard M. Braslow for Board of Fire Commissioners, No. 2, Jackson Twp., Ocean County, appearing amicus curiae (Messrs. Campbell, Sachs & Campbell, attorneys).
HAINES, J.S.C.
The central question raised in this litigation is whether paid fire departments may be created by fire commissioners in fire districts or whether such power resides exclusively in municipal governing bodies. The issue is one of state-wide interest and first impression. It requires the interpretation of statutes covering fire departments, as to which legislative intent is far from clear. The suit also raises a number of peripheral issues involving fire department meetings and expenditures.
The complaint names Moorestown Township Fire District No. 1 and its commissioners as defendants. Injunctive relief is sought to restrain the payment of compensation to various persons and to prevent alleged violations of the Open Public Meetings Law. The Dover Township Fire Commissioners were permitted to intervene; they seek declaratory relief as to their right to pay compensation to fire department personnel. The New Jersey State Association of Fire Districts and the Jackson Township Board of Fire Commissioners No. 2 have filed amicus curiae briefs.
The entire Township of Moorestown is composed of two fire districts, defendant District No. 1 being created in 1886. Its board of fire commissioners controls fire protection and prevention activities within the district through its fire department, composed of the members of two volunteer fire companies, using buildings and equipment owned by the district. *439 The officers of its department who receive compensation, and the annual amounts sought to be paid to them are: Chief  $2,000; Assistant Chief  $1,500; Deputy Chief  $250; Captains  $200; Engineers  $1,170, and Custodians  $1,170. The fire commissioners seek total salaries of $2,700. In the coming year the commissioners propose the employment of an administrator whose salary and related expenses would total $15,265.
The minutes of the fire department indicate that District No. 1 has paid compensation to some officers for many years; in 1893 it paid a Superintendent of Alarms $12 a year, and in 1950 salaries were paid to the Chief, Custodians and Engineers. Moorestown's governing body has never adopted an ordinance creating a paid or part paid fire department or establishing paid positions in the fire department. Past salary appropriations have been included in the fire district's annual budget, submitted to and approved by its voters, not as a separate line item but lumped with other expenses under the title "administration."
The intervenor, Dover Township Fire Commissioners, is composed of all of the commissioners of the two fire districts which encompass Dover Township in Ocean County. They operate under a Mutual Services Agreement authorized by N.J.S.A. 40A:11-10 and pay salaries to four full-time fire dispatchers, eight part-time fire dispatchers, two secretaries, five CETA employees, an auditor, an attorney and certain fire inspectors. Each fire district also retains an auditor and an attorney.
Numerous fire department personnel from other municipalities testified to practices in their fire districts, providing information as to practical interpretation of fire district statutes. It is apparent that practices are far from uniform. Franklin Township pays only for clerical services. Cherry Hill Fire District No. 3 pays a fire marshal, a clerk and six persons, who jointly perform maintenance, administrative and firefighting assignments. The clerk is paid by the fire commissioners, all others by the volunteer fire company in *440 the district which owns the firefighting equipment and contracts with the commissioners to provide fire protection, its budget this year being $275,000. Cherry Hill Fire District No. 4 pays two attorneys, one stenotypist, five persons for general work, a fire marshal and a deputy fire marshal; some are paid by fire commissioners and some by the volunteer company which owns all of the firefighting equipment except one ladder truck owned by the commissioners and leased to the company. The fire marshal is paid an annual salary of $18,000. Cherry Hill Fire District No. 5 has four full-time employees who handle fire prevention, equipment maintenance and clerical chores, all being paid by the fire commissioners. Hamilton Township Fire District No. 3 employs four drivers; they are paid by the commissioners, who also own the equipment and building. The chief of the department performs its clerical work without compensation. In the Oldbridge Fire District the building and equipment are owned by its volunteer companies, while the equipment on the fire trucks is owned by the commissioners. The district has a fire marshal, paid by the township, and two three-man maintenance committees paid by the commissioners. In some years the commissioners pay the companies for janitorial services. In Gloucester Township Fire District No. 2, there is only one volunteer company. The fire commissioners own five vehicles and the company three which are leased to the commissioners. who pay an apparatus engineer, an assistant engineer and a clerk. In Delran Fire District No. 1 a clerk, a fire marshal, two assistants and a treasurer receive compensation.

A. What Is a Paid Fire Department?
References to "paid" and "part-paid" fire departments appear throughout the statutes, e.g., N.J.S.A. 40A:14-7, 9.1, 41, 42. No definitions are provided. The defense argues that the statutes relating to "paid" departments apply only to those which pay persons for fighting fires, and claims *441 that all compensation paid to personnel of their departments is paid for administrative work only. The statutes do not make the distinction for which defendants contend. Furthermore, the activities of their paid personnel are not so readily categorized. In Moorestown, for example, the chief is responsible for overall tactical direction relating to the prevention and extinguishment of fires; he attends almost all drills. The assistant chief undertakes special assignments for the chief and supervises the engineers, who inspect, clean and keep fire-ready all apparatus. The captains are responsible for the operation of the fire companies. Custodians maintain the firehouses. Most of these persons are involved as well in direct firefighting activities. Any effort to define "firefighting", without express statutory direction, must fail. It is apparent that the person who drills others in firefighting techniques, who inspects buildings for fire hazards, who sounds the fire alarm, who readies the equipment for use, and who maintains firefighting records, is as much involved in fighting fires as the person who holds the hose or wields the axe. The definition of "fire department or force" in N.J.S.A. 40A:14-55 as "the officers and members organized to fight fires in the municipality" indicates no distinction between administrative and firefighting personnel.
Furthermore, no distinction can be drawn, for present purposes, between a "paid" and "part-paid" fire department. "Part-paid" denotes a department in which some, but not all, of its personnel receives compensation. However, when we are considering statutes restricting the creation of paid departments, it is apparent that no line can be drawn between those departments which compensate all their members and those which compensate only some; if the contrary were true, conditions imposed by the Legislature could be avoided by paying all members but one of a given department. That cannot have been intended.
Consequently, I conclude that defendants Moorestown and Dover, both of which are paying some of their personnel, have paid fire departments as the term is used in the statutes.

*442 B. Are Boards of Fire Commissioners Autonomous Bodies with Respect to the Creation and Operation of Paid Fire Departments?
Defendants, as they must if they are to sustain their position, separate the statutes dealing with fire protection into two groups, one covering municipal fire departments and the other covering fire districts, and argue that the authority given to the districts and their commissioners make them autonomous. They emphasize N.J.S.A. 40A:14-81, which provides that "commissioners of a fire district shall have the powers, duties and functions within said district to the same extent as in the case of municipalities, relating to the prevention and extinguishment of fires and the regulation of fire hazards." In addition, they point to N.J.S.A. 40A:14-70, which provides in part that the board of commissioners of the fire districts shall be a body corporate and "shall have the power to acquire real and personal property for its purposes. It may adopt and use a corporate seal, sue or be sued, and shall have such powers, duties and functions as are usual and necessary for said purposes." In addition, they note that N.J.S.A. 40A:14-82 refers to "the board of commissioners of a fire district having a uniform paid or part-paid fire department," thus acknowledging the existence of paid departments in fire districts. They could point to the change in the description of the general powers of commissioners from the old statute to the new. In N.J.S.A. 40:151-27, now repealed, fire commissioners were given "all the rights and powers, within said fire district, which shall have been conferred upon townships by any statute relating to the prevention of fires and regulating fire hazards to life and property." N.J.S.A. 40A:14-81 gave commissioners powers in fire matters "to the same extent as in the case of municipalities," thus possibly broadening their powers by referring to all municipalities and not only to townships. Standing alone, these statutory references are persuasive support for the defense position. However, they do not stand *443 alone and related legislation weighs heavily in the opposite direction.
Interpretation of this legislation is aided by rules of statutory construction. The statutes relating to fire protection must be treated in pari materia.
* * * Statutes which deal with the same matter or subject * * *, and which seek to achieve the same overall legislative purpose * * * should and must be read in pari materia. * * * This rule of statutory construction derives from the reasonable presumption that legislators are aware of relevant prior legislation * * *.
While the rule most obviously applies when the statutes in question were enacted during the same session or went into effect at the same time * * *, or where they make specific reference to one another * * *, it may appropriately be applied even when the statutes were adopted in different times and make no reference to each other * * *. [Mimkon v. Ford, 66 N.J. 426 (1975)]
All of the laws significant to this litigation were adopted together, in 1971. Single sentences in those laws are not the guiding lights; the court is to consider the whole act and legislative policy, as well as statutes in pari materia. Coast Cigarette Sales v. Long Branch, 121 N.J. Super. 439 (Law Div. 1972). The statutes to be construed here deal with the tax powers of fire commissioners; salaries must be raised by taxation. Consequently, they are subject to rules of strict construction.
In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt, they are to be construed most strongly against the government, and in favor of the citizen. [Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917), cited with approval in Kingsley v. Hawthorne Fabrics, 41 N.J. 521 (1964)]
These approaches to interpretation require an examination, not only of the statutes which are stressed by the defense, but also of all statutes relating to fire districts and municipal fire protection powers.
*444 Notwithstanding the broad language of N.J.S.A. 40A:14-81, the Legislature has adopted other laws which provide in express language for the revenues which may be raised by fire commissioners in fire districts and set forth the expenditures for which those revenues may be used. In N.J.S.A. 40A:14-70, quoted above, the fire commissioners are said to constitute a body corporate having "the power to acquire real and personal property for its purposes. It may adopt and use a corporate seal, sue and be sued, and shall have such powers, duties and functions as are usual and necessary for said purposes." The only "purposes" for which this language provides authority is the acquisition of real and personal property; it would not advance defense arguments and would not be logical to conclude that "purposes" relates to the use of a seal and to the power to sue and be sued. In N.J.S.A. 40A:14-72 the legal voters of the fire district are to "determine the amount of money to be raised for the ensuing year" at the annual fire district election. Nothing here describes the purposes for which money may be raised. In N.J.S.A. 40A:14-79 the commissioners are directed to certify the amount of money voted at the annual district meeting to the assessor of the municipality, who then assesses that amount against the taxable property within the district. The monies thus produced are to be paid to the treasurer of the fire district, "to be held and expended for the purpose of providing and maintaining means for extinguishing fires in said district." N.J.S.A. 40A:14-80 permits the commissioners to borrow money in anticipation of the receipt of the revenues appropriated at the annual election "for current expenses and necessary repairs to fire apparatus and fire houses within the district * * *."
Both N.J.S.A. 40A:14-79 and 80, insofar as they describe the purposes for which fire district monies may be used, are dependent upon other sections of N.J.S.A. 40A:14 authorizing the appropriations which may be submitted to the voters at the annual district election, namely N.J.S.A. 40A:14-84 and 85. The former provides that "the legal *445 voters * * * may vote to raise money for a fire house, apparatus and appliances in connection therewith for fire extinguishing purposes, in an amount not exceeding five mills on the dollar of the last assessed valuation of the property in the fire district." The latter authorizes the commissioners to "purchase fire engines, apparatus or other appliances for the extinguishment of fires and acquire lands or buildings or erect buildings for housing of such equipment," raising the money by bond issues to be approved by the voters. These provisions constitute clear limitations upon the purposes for which the commissioners may raise money, namely, for the acquisition of tangible items of property, and, by implication, for the operation, maintenance and training of personnel in the use thereof. (A statute may speak as plainly by inference as by words. Lomarch v. Englewood, 51 N.J. 108 (1968).) That these provisions are to be read restrictively is underlined by N.J.S.A. 40A:14-40, which provides that "all monies required and appropriated for the payment of any premiums or costs of said insurance [for volunteer firemen] shall be raised, collected and paid as are other monies to maintain the fire departments, or to provide for fire protection in said municipality, or fire district." (Emphasis supplied.) Thus, the Legislature found it necessary to adopt specific language to permit insurance premiums to be included in the list of proposed expenditures to be submitted to the voters, indicating that the language of N.J.S.A. 40A:14-84 would not include this expense.
There is no express authority contained in any statute permitting fire commissioners to establish paid positions in fire departments or to pay salaries to members thereof. The opposite is true with respect to municipal governing bodies, which are given express and detailed authority to establish paid or part-paid fire departments, and "to provide for the maintenance, regulation and control thereof, and except as otherwise provided by law, appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their *446 powers, functions and duties * * *." N.J.S.A. 40A:14-7. Again, in N.J.S.A. 40A:14-41 municipalities are permitted to convert a volunteer force into a paid department by ordinance and voter approval. Fire districts are not mentioned.
Prior to 1971 the statutes relating to municipal fire departments and those relating to fire districts were separate enactments, the first being contained in N.J.S.A. 40:47-1 et seq. and the other in N.J.S.A. 40:151-1 et seq. These statutes, insofar as they apply here, were repealed in 1971 when the Legislature adopted, as part of its revision of municipal law, N.J.S.A. 40A:14-7 to 105, statutes which bring together the significant rules contained in the prior enactments relating to both municipal fire departments and fire districts. N.J.S.A. 40A:14-7 is the opening section of these statutes relating to fire departments, thus highlighting the power given to municipalities with respect to paid departments. If the Legislature wished fire districts to have the authority to create paid departments, it had the obvious opportunity to do so in explicit terms by referring to N.J.S.A. 40A:14-7 or repeating its language when establishing the powers of fire commissioners. Its failure to do so must be construed as important. The maxim "expressio unius est exclusio alterius" has obvious application. Resnick v. East Brunswick, 77 N.J. 88 (1978).
Historically, the Legislature has always provided broad authority to municipalities for raising revenues by taxation for fire protection purposes. Thus, in 1886 municipalities were authorized to establish paid fire departments and to provide for their operation by fire commissioners. L. 1886, c. 42, p. 54. This act was saved from repeal. N.J.S.A. 40A:14-100. N.J.S.A. 40:148-1, adopted in 1899, provides that township committees may raise by taxation and appropriate sums of money for "the prevention of the destruction of property by fire, or the prevention and extinguishment of forest fires." N.J.S.A. 40:47-1, adopted in 1917, provided detailed authority to municipalities for the creation of paid fire departments.
*447 N.J.S.A. 40A:14-7, adopted in 1971, spells out the modern powers of municipalities with respect to these departments. The 1971 enactment not only repeats the language which gave these broad powers to municipalities in N.J.S.A. 40:47-1, but adds language which extends those powers. In 1941 municipalities were given authority to provide financial assistance to volunteer fire companies and to fire districts. N.J.S.A. 40:47-21. This authority now appears in N.J.S.A. 40A:14-34, which increases the amount of monies which may be appropriated and adds the following language:
Any municipality may appropriate such additional sums as it may deem necessary for the purchase of fire equipment, supplies and materials for use by fire companies or boards, the title to which shall remain with the municipality, provided that the fund shall be controlled and disbursed by the municipality.
Since 1921 municipalities have had authority to contribute monies to adjoining municipalities and to fire districts therein for the purpose of obtaining fire protection. N.J.S.A. 40:47-28. This authority was broadened in the 1971 revision. N.J.S.A. 40A:14-35. Municipalities with volunteer forces were restricted by N.J.S.A. 40:47-32 (adopted in 1917 and repealed in 1971) as to the establishment of paid fire departments: they were required to submit any enabling ordinance to the voters for approval. The same restriction now appears in N.J.S.A. 40A:14-41.
This long recital of express statutory authorization to municipalities for the creation of paid fire departments and the raising of revenues to support them, is striking when compared with the total absence of such express authority in the case of fire districts.
N.J. Const. (1947), Art. IV, § VII, ¶ 11, requires the liberal construction of laws concerning municipal corporations and provides that their powers "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, *448 or essential thereto, and not inconsistent with or prohibited by this constitution or by law." It has been held that these constitutional provisions do "not connote an extension of the boundaries delineated by the statutory phraseology as commonly used * * *." Grogan v. DeSapio, 11 N.J. 308 (1953). If the court is not permitted to extend municipal powers under these circumstances, it may not extend those of fire commissioners either N.J.S.A. 40:42-3, a part of legislation dealing with municipalities generally emphasizes the preference to be given governing bodies as opposed to other municipal boards of agencies, providing:
In case any additional power is conferred upon any municipality by this sub-title and no board or body is designated by the statutes effective in such municipality as the one that exercises such power, then the term `governing body' shall be construed to mean the board or body exercising general legislative power in such municipality.
Finally, it is worth repeating to say that we are dealing with the taxing authority of fire districts and municipalities, a circumstance which provides further limitations on these districts. The power of taxation is vested in the Legislature; municipalities have no such power "except to the extent plainly delegated to them by the Legislature." Salomon v. Jersey City, 12 N.J. 379 (1973). Here, such power has been "plainly delegated" to municipalities; the same cannot be said as to fire commissioners.
Municipalities may create paid fire departments only by ordinance. N.J.S.A. 40A:14-47, 81 and 100. Fire commissioners proceed by resolution. Ordinances require two readings, publication and hearing before passage; this is not true of resolutions. N.J.S.A. 40:49-1 and 2. It has been said that ordinances usually encompass legislative acts while resolutions cover procedural acts. O'Keefe v. Dunn, 89 N.J. Super. 383 (Law Div. 1965) aff'd 47 N.J. 210 (1965). When the law requires an ordinance, a resolution is not sufficient. Inganamort v. Fort Lee, 72 N.J. 412 (1977); Public *449 Service Elec. & Gas Co. v. Camden, 95 N.J.L. 190 (E. & A. 1921).
A municipal office or position, if not created by statute, can come into being only by ordinance of the governing body of a municipality. * * * Under R.S. 40:46-23 [now N.J.S.A. 40A:9-165] salary ranges must be fixed in the first instance by ordinance. [Giannone v. Carlin, 20 N.J. 511 (1956)]
The reason for requiring an ordinance as opposed to a resolution is obvious: it informs the public, which thereby is given an opportunity to object or otherwise participate in the municipal legislative process. Espinos v. Monroe Tp., 81 N.J. Super. 283 (App. Div. 1963); Nolan v. Witkowski, 56 N.J. Super. 480 (App. Div. 1959), aff'd 32 N.J. 426 (1959). Since fire commissioners have no power to adopt ordinances, the creation of a paid fire department by them would be accomplished by resolution, a relatively informal procedure with little public notice required. It is true that all salaries to be paid by fire commissioners must be approved by the voters when the district budget is presented to them each year. To this extent, there is public participation. However, the concept of a paid department is not submitted to the voters in this process. Further, salaries may receive little airing. Past practice, in Moorestown, has been to lump salaries together in the budget with certain other expenses under the title "administrative," so that voters did not know what was to be paid to whom.
For these reasons, it must be concluded that the power to create a paid fire department in any municipality in New Jersey resides in its governing body and only in its governing body, and that fire commissioners have no authority in this respect.[1], [2]

*450 C. Matters Which Buttress the Conclusion
Further analysis of our statutes dealing with fire protection disclose numerous reasons buttressing the conclusion that fire commissioners may not create paid fire departments:
(1) When there is a volunteer force in the community, a municipality may not create a paid fire department under N.J.S.A. 40A:14-41 without adopting an ordinance and submitting it to the voters for approval. If the fire commissioners' position is correct, they may establish a paid fire department without either ordinance or voter approval. Surely, the Legislature did not intend to give the fire commissioners this extensive authority while denying it to the municipalities.
(2) There are two volunteer fire companies in Moorestown Fire District No. 1. Under N.J.S.A. 40A:14-41, after the voters have approved the creation of a paid fire department, the governing body is expected to convert the volunteer force into the department. There is no similar statutory provision with reference to fire districts. It is apparent that the Moorestown commissioners do not consider themselves subject *451 to that requirement. They have created a paid fire department but have not converted the volunteer companies into it. The Legislature could not have intended this distinction.
(3) The Legislature has adopted numerous provisions relating to paid fire departments. These deal with general qualifications of members (N.J.S.A. 40A:14-9), residency requirements (N.J.S.A. 40A:14-9.1), civil service (N.J.S.A. 40A:14-9.2, 9.4, 9.6), military service (N.J.S.A. 40A:14-10.1), eligibility priorities (N.J.S.A. 40A:14-10.1a), age requirements (N.J.S.A. 40A:14-12), minimum salaries (N.J.S.A. 40A:14-18) and suspension or removal (N.J.S.A. 40A:14-19). These are merely illustrative; there are numerous other such provisions. The by-laws of the Moorestown District do not reflect any provisions meeting these statutory requirements, except for one which establishes a minimum age of 18, contrary to law. Further, the Moorestown commissioners have not adopted any resolution setting forth terms of office, compensation, powers, functions, duties, or any other regulations relating to a paid fire department, as required by N.J.S.A. 40A:14-7 in the case of municipalities. Dover did not submit its by-laws; it appears, like Moorestown, to have adopted no enabling resolution. Obviously, these defendants did not consider themselves subject to all of the statutes to which municipal paid departments are subject.
(4) The present fire statutes create a system of double taxation. A fire district which comprises less than an entire municipality may appropriate money for buildings and equipment, repairs, maintenance and training, raising the money by taxing only property owners within their district. On the other hand, municipalities, under N.J.S.A. 40:148-1 and N.J.S.A. 40A:14-34, may raise money for fire protection which may or may not go, in whole or in part, to the fire district, taxing all property owners within the entire municipality for that purpose. Consequently, those persons owning property within a fire district may be taxed once by the fire *452 commissioners and again by the governing body. The propriety of this arrangement is not before the court. It is mentioned, however, because it seems doubtful that the Legislature intended to extend the power of double taxation to include the raising of revenues for paid fire departments.
(5) If a fire district may have its own paid department, and a municipality an additional paid fire department in the balance of the municipality, significant double taxation will result. Property owners in the fire district will contribute to both paid departments. The alternative is to deny the municipality the right to a paid department when it has established a fire district. Either alternative seems contrary to legislative intent.
(6) The expectation that governing bodies will have continuing control over compensation paid to fire district personnel by fire commissioners is evident from N.J.S.A. 40A:14-88 and 28. The first permits the fire commissioners themselves to receive compensation, only in "such amounts as the board shall fix subject to review by the governing body." The second provides that the municipality, not the district, is liable for the provision of counsel and for costs in the defense of suits against members or officers of municipal fire departments. There is no statute authorizing the appointment of a solicitor for a fire district, while municipalities are directed to appoint a municipal attorney under N.J.S.A. 40A:9-139. Other controls remain in governing bodies: the right to enlarge a fire district (N.J.S.A. 40A:14-90), the right to dissolve a fire district (N.J.S.A. 40A:14-91) and the cancellation or refund of taxes in connection with the dissolution of a district or the illegal creation of a district (N.J.S.A. 40A:14-92 and 93).
(7) The Legislature adopted the State Uniform Construction Code Act, N.J.S.A. 52:27D-119, in 1975. The act provides for the review of building plans and the inspection of new construction. One of its purposes is fire prevention. According to testimony presented in this cause, extensive efforts, on a state-wide basis, were made by fire department *453 personnel to have the enforcement of the act placed in the hands of firemen. A bill for this purpose was introduced by Senator Russo; it did not pass. The statute finally adopted places control of all of its provisions in municipalities, through a "Municipal Construction Official." N.J.S.A. 52:27D-126. A fireman, or person with fire prevention experience, is required to be appointed as "a fire prevention subcode official," N.J.S.A. 52:27D-126.1, who is subject to the jurisdiction of the municipal construction official. Fire commissions who had appointed fire prevention officials in a municipality before the effective date of the act have the power to appoint subcode officials to fire prevention positions created by the municipality. Consequently, the Legislature, when considering authorization to create fire prevention positions, which are paid positions in Moorestown and Dover, under circumstances involving strong pressure for the favoring of fire departments, assigned that authority to municipalities. That decision is in keeping with my interpretation of the statutory scheme; paid positions for firemen and paid fire departments are to be created only by municipalities.

D. Fire Commisioners' Salaries
The Moorestown fire commissioners have not had their salaries reviewed by the governing body for three years. They have not changed their salaries during that time and have proceeded on the assumption that approval is necessary only in connection with a change. I do not read the statutes that way. Under N.J.S.A. 40A:14-88 the compensation of each member of the board of commissioners must be reviewed by the governing body. Their salaries are a part of the annual budget submitted to the voters. It is likely that the total budget and the economic situation of the municipality change every year. The salary figures, whether changed or not, must be considered by the governing body in the context of the annual municipal budget. It follows that the Legislature intended an annual review. Further, it is obvious *454 that the review must be completed before the budget is submitted to the voters so that the governing body will not be forced to accede to a fait accompli or to invalidate salaries fixed by the voters and also to permit the voters to consider a valid figure.
The present case presents this question for the first time. The budget has been approved at the election. Under the circumstances I will permit the governing body's review of the proposed salaries to take place now, provided it is in advance of the payment of salaries to commissioners. If the review is negative, the salaries may not be paid. In this context it should be noted that the secretary and treasurer of the board of fire commissioners have in the past been members of the board. Under the language of the statute, any salary paid to a person or persons occupying those positions should be submitted to the governing body for review as well.

E. Reimbursement for Losses of Volunteer Firemen
N.J.S.A. 40A:14-36 provides:
The governing body of a municipality, by resolution, may appropriate annually such sums of money as they [sic] shall deem necessary for the purpose of compensating any volunteer firemen not in receipt of compensation for his services, for any losses sustained by him while performing his duties as such volunteer fireman.
The practice in Moorestown Fire District No. 1, and apparently in other fire districts, has been for the fire commissioners to appropriate an annual sum to cover such losses. These funds are then distributed among the volunteer firemen on the basis of drills and fires attended. Payment is not made to reimburse losses, but as a reward for attendance. The monies are not appropriated by the governing body, but by the commissioners. These procedures do not meet the statutory requirements. The monies must be appropriated by the municipality and disbursed on receipt of vouchers reflecting actual losses.

*455 F. Fire Inspection
Both Moorestown and Dover Townships have appointed fire prevention subcode officials under the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 et seq. These officials are subject to the jurisdiction of the municipally-appointed construction official, who enforces the act. Both municipalities have fire inspectors appointed in accordance with fire prevention ordinances and paid by their fire commissioners who fix their salaries. In Moorestown the money to pay these fire prevention officials is supplied by the township to the commissioners. In Dover the money is raised in the fire district budgets. The arrangements are not in accordance with law. Fire prevention subcode officials, though appointed by fire commissioners, are municipal officials, N.J.S.A. 52:27D:126.1, and should have their salaries fixed and paid by the municipality. Ordinances establishing positions for paid fire inspectors in fire departments create paid departments and must be submitted to the voters under N.J.S.A. 40A:14-41. This was not done by either municipality. Finally, on the basis of my statutory analysis, fire commissioners may not create paid positions in fire departments.

G. Solicitor's Fees
As noted above, fire commissioners are not authorized to employ attorneys. The statutory scheme requires that such legal services be provided by the municipality whenever a member or officer of a fire department is involved in legal proceedings. The solicitors here involved are bound to proceed under that authority. The rules are set forth in Edison Tp. v. Mezzacca, 147 N.J. Super. 9 (App. Div. 1977).

H. The Proposed Administrator
The commissioners propose to employ an administrator in the coming year and have submitted the question of his *456 salary and related expenses to the voters, subject to my ruling in this action. In view of my definition of a paid fire department, it is apparent that the commissioners have no authority to employ an administrator. Consequently, the proposal cannot be approved.

I. Civil Service
Plaintiffs insist that all paid members of the Moorestown Fire Department are subject to Civil Service regulation. Since I have determined that Moorestown may not continue to have the paid fire department created by its fire commissioners, the issue is moot and therefore will not be decided.

J. The Open Public Meetings Act
In Moorestown, for some years, it has been the practice of the fire commissioners in Fire District #1 to meet at the home of one of them for the purpose of discussing the annual budget and other fire district matters. These meetings were private; no public notice was given. These meetings did not comply with the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq., to which the commissioners are subject as a "public body" under § 8(a) of the act. Of particular interest here, the commissioners decided upon the annual budget and the creation of the position of administrator at a noncomplying meeting. Failure to comply with the act appears to have resulted from a combination of lack of information about the law and an unwillingness to discuss some subjects, particularly the budget, in a public session.
One Moorestown commissioner testified that he anticipated that future budget meetings would be closed to the public, that he believed that to be acceptable. Another commissioner referred to the act as "silly" and a "hunk of junk." He said that he considered the commissioners to have been harassed as a result of this law. Later, he apologized to *457 the court for making the comments. Both commissioners insist that they intend to comply with the act in the future.
In view of this history it is not surprising that plaintiffs seek the assistance of an injunctive order to insure compliance with the act. Orders for future compliance are authorized by N.J.S.A. 10:4-16 and were employed in Polillo v. Deane, 74 N.J. 562 (1977). I find they are entitled to such an order. Since the commissioners insist upon their intention to comply, they cannot be injured by its issuance.
In so holding I do not conclude that the budget as finally adopted by the commissioners was acted upon in violation of the Open Public Meetings Act. On the contrary, while its initial consideration was undertaken at a private meeting, it was considered subsequently at a regularly convened public meeting which met the requirements of the act.

K. The Amount of the Budget Allowed
In view of the compelling need to insure revenues for Moorestown Fire District No. 1 in the coming year, I authorized the submission of a budget to the voters on May 5, 1979, containing various alternative provisions, all of which were subject to my rulings in this cause. It is my understanding that this budget, with all alternatives, was approved by the voters. In view of my conclusions, those budget items relating to an administrator's salary and expenses, and to salaries of other members and officers, other than commissioners, must be eliminated. Any other salaries included in the line item "administrative", may not be paid and shall be transferred by the fire commissioners to their surplus funds, not to be expended during the coming year. The inclusion of these monies, modest in amount, does not invalidate the entire budget.
The budget, approved by the voters, contains an appropriation of $5,000 for volunteer firemen. In the event this item was designed to cover reimbursement to these firemen, it *458 should not have been included since I have held that these monies are to be provided by the municipality. However, this ruling has been made for the first time in this case, with the probable result that no monies are available to pay a fireman's losses through any municipal fund. Under the circumstances, I will authorize the use of these monies to pay actual losses of firemen during the ensuing year. Any part of the appropriation not expended to cover losses will become a part of the commissioners' surplus.
Costs are allowed plaintiffs.
NOTES
[1] This conclusion, or for that matter, one which agreed with defendants, leaves unsolved problems resulting from unclear or defective statutes. For example, may a municipal governing body create a paid fire department for less than the entire municipality? Under N.J.S.A. 40A:14-41 the question must be submitted to the voters of the entire municipality. Is it intended that voters who will not receive the fire department's services vote on the question of its creation? May a governing body establish a paid fire department for an entire municipality which contains fire districts? How may a fire district participate in the operation of such a department? If a municipality may not create a paid department for less than the entire community and may not create one when it has an established fire district, it has no power with respect to such departments  they cannot be created. Solutions for these problems are for the Legislature; they cannot be supplied by the courts. Sabato v. Sabato, 135 N.J. Super. 158 (Law Div. 1975).
[2] A word should be said with respect to N.J.S.A. 40A:14-82, which refers to a fire district "having a uniform paid or part-paid fire department," thus indicating a legislative understanding that fire districts may have paid departments. In view of my analysis of legislative intent, this section of the statutes seems an anomaly. It has relevance to those municipalities comprising a single fire district; I can find no other reason for its existence.