HAMILL, J.T.C.
In this local property matter, the City of Asbury Park (City) appeals a Monmouth County Board of Taxation judgment granting a tax abatement on defendant’s property.
The subject property is designated as Block 183, Lot 9 on the tax map of the City of Asbury Park, commonly known as 1210 Main Street. For the 1992 tax year, the property was assessed at:
Land $ 79,200
Improvements 263,500
Total $342,700.
The City, through its attorney, denied an application for tax abatement for the property on the ground that the application for abatement was filed too late. Subsequently, the Monmouth County Board of Taxation granted an abatement with respect to $184,000 of the total assessment for 1992 and the succeeding three years. On October 27,1992, the City filed a complaint challenging the abatement.
Prior to the period at issue, the subject property consisted of a one-story service station having three bays. During 1989 the owner, Castagno Tires, began to construct a second story to be used for the storage of tires and a fourth service bay. Originally, the second story was to have had a locker room and restroom in addition to the storage area, but these latter facilities were never constructed.
On August 30, 1990, the Asbury Park assessor visited the property. She observed that a second story had been added and found that tires were being stored there. She saw that a fourth bay had been constructed and was operational. In discussions with Mr. Castagno, president of the company, she learned that the second story and fourth bay had been operational for approximately two months. As a result of her inspection and discussions, the assessor included the addition on her added assessment list for *493 the 1990 tax year, which was filed -with the Monmouth County Board on October 1, 1990. The addition was assessed at $72,500, an amount that was prorated to $36,250 to reflect a June 30,1990 completion date.
The taxpayer did not contest the added assessment before the Monmouth County Board. Instead, it requested an application for tax abatement, which the assessor forwarded on September 7, 1990. On December 27,1990, the taxpayer filed with the assessor an “application for project tax abatement under Chapter 12, P.L.1977.”
On January 31, 1991, the assessor advised that in her view the application was untimely because it had not been submitted within 60 days of completing the project but that she had nevertheless forwarded the application to the city council for review. On July 25, 1991, the city attorney’s office advised the taxpayer’s counsel that the application for tax abatement was denied because the application was not filed within 60 days of completion of the project as required by N.J.S.A. 54:4r-3.98.
Shortly after the City rejected the application for tax abatement, the assessor, on August 16, 1991, filed a petition -with the county board seeking an increase in the assessment for the 1991 tax year due to a calculation mistake in the square footage of the addition that had been the subject of the added assessment for 1990. Ultimately, the county board agreed with the assessor and increased the total assessment from $237,700 to $342,753. The taxpayer did not appeal this judgment to the Tax Court.
On March 30, 1992, the taxpayer filed a petition with the Monmouth County Board requesting an abatement and a consequential reduction in the assessment on the property. As previously indicated, the Board granted the requested abatement, and this appeal by the City followed.[1]
*494 At trial, Mr. Castagno conceded that, when the city assessor inspected the property on August 30, 1990, the second story was being used for the purpose intended, namely the storage of tires. He conceded, as well, that the fourth service bay was operational but only on a makeshift basis because the compressor that was intended to operate the lift in the fourth bay had not yet been delivered. At some point between September and December 1990, Mr. Castagno and his lawyer discussed with the contractor the work needed to finish the renovations. The incomplete items included black topping, grading, exterior lighting, spackling, interior painting, and some of the plumbing, electrical, heating, and air conditioning work. In Mr. Castagno’s opinion, the work was completed between December 1990 and January 1991, at approximately the same time his application for tax abatement was filed. To date, no certificate of occupancy for the renovations has been issued.
In addition to stipulating certain of the facts recited above, the parties stipulated that the applicable statute is N.J.S.A 54:4-3.95 et seq., rather than N.J.SA 40A:21-1 et seq. The latter statute, known as the Five-Year Exemption and Abatement Law, L. 1991, c. 441, replaced and repealed N.J.S.A 54:4-3.95 et seq., effective January 18, 1992. Section 23 of the new law expressly validates exemptions and abatements granted pursuant to N.J.S.A 54:4-3.95 et seq. The parties further stipulated that, pursuant to N.J.SA 54:4-3.97, Asbury Park had enacted a general ordinance implementing the abatement statute and constitutional provisions. Finally, the parties stipulated that the addition at issue constitutes a “project” as opposed to an “improvement." Under N.J.SA 54:4-3.96, a project is defined as the construction of a new industrial or commercial facility or the “enlargement of the volume of an existing structure by more than 30%.” An improvement is defined as the renovation of a commercial or industrial structure that does not increase the volume of the structure by more than 30%. Ibid.
The City asserts, first, that it has never adopted an ordinance approving a tax abatement for the subject property and has never *495 executed an agreement with the taxpayer providing for the abatement. Additionally, according to the City, the filing of an application for tax abatement, enactment of an ordinance authorizing a particular tax abatement agreement, and execution of an agreement for tax abatement must all occur prior to the start of construction and must all be in place by October 1 of the pretax year, in this case by October 1, 1991. Second, the City argues that the taxpayer’s appeal to the Monmouth County Board seeking the abatement was untimely because the addition was substantially completed in June 1990, while the taxpayer’s petition to the county board was not filed until March 30, 1992. Third, the City asserts that, since no valid abatement was granted under N.J.S.A. 54:4-3.95 et seq. by January 1992, the repeal of that statute pursuant to L. 1991, c. 441 precludes any grant of abatement under the repealed statute.
The taxpayer responds that it complied with all statutory requirements. In particular, it asserts that nothing in the state statute requires that an applicant sign a proposed agreement for tax abatement as a precondition to submission of an application for tax abatement or that an application for abatement be submitted prior to construction of the building for which abatement is sought. Additionally, according to the taxpayer, Asbury Park’s ordinance does not require the execution of an agreement for tax abatement as a precondition of filing an application or proceeding with construction. The taxpayer further asserts that, in view of the assessor’s failure to act on its abatement application, it followed the only course of action available—the filing of a petition with the county board. Finally, taxpayer asserts that the enactment of L. 1991, c. 441 does not preclude relief under the prior statute because it diligently pursued its rights under the old law and because the new law specifically preserves the significant features of the old law.
The City’s second argument will be addressed first because, if the argument is correct, the court lacks jurisdiction to hear the matter on the merits. The City argues that the taxpayer’s petition of appeal to the Monmouth County Board, filed on March *496 30,1992, seeking tax abatement for the addition, was untimely and that the taxpayer, instead, should have appealed the 1990 added assessment or the 1991 regular assessment.
The City is correct that the taxpayer’s failure to timely appeal the 1990 added assessment or the 1991 regular assessment precluded a subsequent change in the taxable status of the property for those years. N.J.S.A 54:4-63.11 requires that an added assessment be appealed to the county board by December 1 of the year of levy. Failure to comply with the statutory deadline means that the county board, as well as the Tax Court, lacks subject matter jurisdiction to review the assessment. Royal Bradley Assocs. v. Bradley Beach Borough, 252 N.J.Super. 401, 599 A.2d 1288 (App.Div.1991); 18 Washington Place Assocs. v. Newark, 8 N.J.Tax 608, 613-14 (Tax 1986) (citing cases). As a general rule, absent an appeal, the taxable status of property is fixed as of October 1 of the pretax year; subsequent conversion to an exempt use does not render the property exempt for that year. East Orange v. Palmer, 47 N.J. 307, 321, 220 A.2d 679 (1966); Shelton College v. Ringwood Borough, 48 N.J.Super. 10, 136 A.2d 660 (App.Div.1957). Nothing in the Tax Abatement Law suggests that a subsequent grant of tax exemption or tax abatement will change an assessment that has been fixed for a prior year. Cf. B.P.U.M. Dev. & Urban Renewal Corp. v. Camden, 9 N.J.Tax 490, 506-07 (Tax 1988), aff'd per curiam, 11 N.J.Tax 95 (App.Div.), certif. denied, 118 N.J. 201, 570 A.2d 963 (1989).
On the other hand, the subject property was not eligible for tax abatement for the 1990 tax year without regard to taxpayer’s failure to appeal the added assessment. Under N.J.S.A 54:4-3.101c, an abatement based on a five-year phase-in of property tax payments begins with “the first full calendar year after completion.” Taxpayer’s addition was completed during 1990,[2] and thus the first year of the tax abatement, assuming a timely application, *497 would have been the 1991 calendar year. The tax year 1990 was not eligible for an abatement.
Although the taxpayer should have appealed the 1991 regular assessment in order to preserve its ability to obtain a tax abatement beginning with the 1991 tax year, its failure to do so did not preclude it from claiming a tax abatement for 1992 through 1995. Taxpayer filed its petition of appeal seeking a tax abatement on March 30, 1992. This filing with the county board was timely with respect to the 1992 tax year since the filing deadline for that year was April 1. N.J.S.A. 54:3-21. Although there is no provision in the Tax Abatement Law specifying the time for appealing a denial of tax abatement to the county board, taxpayer fits within the language of N.J.S.A. 54:3-21 authorizing appeals to the county board as a “taxpayer feeling aggrieved by the assessed valuation of his property.” Bergen County v. Paramus Borough, 79 N.J. 302, 305, 399 A.2d 616 (1979). The Tax Abatement Law limits a tax abatement agreement to a “period of not more than 5 years starting with the date of completion of the project,” N.J.S.A. 54:4-3.102, and specifies the percentage of taxes otherwise due which shall be paid in each of the five years following completion of a project. N.J.S.A. 54:4-3.101c. Provided the various statutory prerequisites are met, the Tax Abatement Law does not prevent a taxpayer from qualifying for an abatement for a portion of the five-year period. As reflected on the face of the county board judgment, the board intended the judgment to be effective for the 1992 tax year and, recognizing that the addition had been completed in 1990, the board treated 1992 as the second year of the five-year abatement by granting an abatement of 80% (rather than 100%) of the taxes otherwise due for that year.
Since the taxpayer’s petition to the county board was timely as to the 1992 tax year, the board had jurisdiction to consider the abatement application for 1992 and subsequent years, and the court is not deprived of jurisdiction to dispose of the case on its merits.
As described by Judge Lario in B.P.U.M. Dev. & Urban Renewal Corp. v. Camden, supra, 9 N.J.Tax at 500, the Tax Abatement *498 Law, N.J.S.A 54:4-3.95 et seq., was enacted under the authority of a 1975 constitutional amendment permitting municipalities to adopt ordinances granting tax exemption or tax abatement on properties in areas declared in need of rehabilitation, provided that any such exemption would be limited to a period of five years. See also N.J. Const. art. VIII, § 1, K 6. According to Asbury Park City’s general ordinance, the entire area of the City of Asbury Park has been designated an area in need of rehabilitation.
The question of whether the City complied with the statutory requirements for granting an abatement is to be tested under article IV, § 7, 1111 of the 1947 Constitution, which provides:
The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.
N.J.S.A 54:4-3.95 et seq. must therefore be liberally construed in favor of upholding the City’s ordinance providing for tax exemptions and abatements. See Union County Bd. of Chosen Freeholders v. Union County Park Comm’n, 41 N.J. 333, 339, 196 A.2d 781 (1964). Moreover, the powers granted the City pursuant to N.J.S.A 54:3-95 et seq. must be deemed to include those additional powers necessary or incidental to accomplish the powers conferred. Holmdel Builders Ass’n v. Holmdel Tp., 121 N.J. 550, 566, 583 A.2d 277 (1990) (fees imposed by municipal ordinances for purpose of satisfying municipalities’ obligation to provide affordable housing were implicit in municipal zoning power conferred by Municipal Land Use Law). On the other hand, liberal construction does not mean a departure from the plain language of the statute. Grogan v. DeSapio, 11 N.J. 308, 316-17, 94 A.2d 316 (1953) (municipal resolutions limiting powers and duties of two of five commissioners would be set aside as violative of purposes of Walsh Act); Lynch v. Edgewater Borough, 8 N.J. 279, 286, 85 A.2d 191 (1951) (statute providing that municipal officer who was a member of the Army Reserve was entitled to paid leave for all days in which he was engaged in “field training” did not extend to leave for attendance at Army service school). If a statute pre *499 scribes procedures for accomplishing a delegated power, a municipality is not free to ignore those procedures. Magnolia Dev. Co., Inc. v. Coles, 10 N.J. 223, 227, 89 A.2d 664 (1952) (municipality could not impose conditions on approval of plot plan that were not contained in state laws relating to local planning boards and local improvements); Donovan v. New Brunswick, 50 N.J.Super. 102, 107, 141 A.2d 134 (Law Div.1958).
Asbury Park’s ordinance pertaining to tax exemptions and tax abatements is questionable in three respects when compared to the state statute. These include the timing of an application for tax abatement, the existence vel non of a tax abatement agreement, and proper authorization of the agreement.
As to the timing of an application for tax abatement, the City’s general ordinance requires that an application for tax abatement be filed “within sixty (60) days of the completion of such projects.” Asbury Park, N.J., Amended Ordinance 2060, § 2a (July 6, 1988). This requirement is plainly consistent with N.J.S.A 54:4-3.98c pertaining to applications for tax exemption, but the enabling statute differentiates between improvements, which are eligible for complete tax exemption, and projects, which are eligible for tax abatement, which reduce, but do not eliminate, the taxes on a property. As to projects, the statute provides no timetable for filing an application for tax abatement. N.J.S.A. 54:4-3.100 mandates that the contents of an application include, among other things, submission of the “[p]lans, drawings and other documents as may be required by the governing body to demonstrate the structure and design of the project” and “Estimates of the cost of completing [the] project.” While this provision suggests that an application may be filed prior to completion of a project, it does not provide a specific deadline and, construed liberally in favor of upholding the ordinance, does not prohibit the filing of an application after construction has been completed. Quite plainly, contrary to the City’s argument, N.J.SA 54:4-3.100 does not require that an application be filed prior to the start of construction. Further, N.J.SA 54:4-3.99, in authorizing tax abatement agreements for “projects which are or will be located” *500 (emphasis added) in areas in need of rehabilitation, suggests that,, at the time an agreement is entered into, a project may already be in existence.
Legislative history lends further support to the conclusion that an application for tax abatement need not necessarily be filed prior to the start or completion of construction. The Tax Abatement Law originated in two bills, Assembly Bill 1902 (1976) and Senate Bill 355 (1976). Many of the tax abatement provisions were included in Assembly Bill 1902, including the precursor of N.J.S.A 54:4-3.100. That section in Assembly Bill 1902 stated: “Applicants for tax abatement projects shall furnish with an application details of the proposed project----” Assembly Bill 1902, § 15 (1976) (emphasis added). In the substitute bill and N.J.S.A. 54:4-3.100 as enacted, the word “proposed” was eliminated, suggesting that, at the time a tax abatement application is filed, a project may be beyond the proposed stage.
Permitting the filing of an abatement application subsequent to the completion of construction does not frustrate the legislative purpose of encouraging new construction in blighted areas. A taxpayer who wishes to ensure a future tax abatement for proposed construction may file in advance; nothing in the statute forecloses a pre-construction application. The statute clearly contemplates that applications for exemption may be filed following the completion of construction. N.J.S.A 54:4-3.98. If the Legislature truly believed that construction in blighted areas would be encouraged only if tax benefits were assured in advance, it would have required that exemption applications, as well as abatement applications, be filed prior to the start of construction. Asbury Park’s ordinance permitting an abatement application to be filed within 60 days of completion of construction thus does not frustrate the policy or purpose of the state statute.
While it is true that Judge Lario stated in B.P.U.M. Dev. & Urban Renewal Corp., supra, 9 N.J.Tax at 502, that the information required in an abatement application is to be received “in advance by the municipality so that it [can] intelligently determine whether a tax abatement should be authorized,” Judge Lario did *501 not conclude that such an application was required to be received before construction began. Moreover, he also indicated that the particular abatement application was not filed within 60 days following completion of the improvements. Id. at 505. Since the Tax Court’s opinion is inconclusive on the point, a liberal construction of N.J.S.A 54:4-3.95 et seq. and an inference of the powers necessary to accomplish the statutory objective require the conclusion that the City’s ordinance is not in conflict with the enabling statute in providing that applications for tax abatement be filed within 60 days following completion of a project.
The next question is whether Castagno Tires complied with the municipal deadline. As previously indicated, the enabling statute, N.J.S.A 54:4-3.98, requires that an application for tax exemption be filed within 60 days “following the completion of the improvement.” Since the ordinance adopts the same timetable for exemption and abatement applications and uses the same triggering event, “completion” of the improvement or project, the meaning accorded the word “completion” for purposes of the state statute must apply to the City’s ordinance. The Tax Abatement Law does not define the word “completion,” but the word is defined in the statute providing limited exemptions for home improvements, N.J.S.A 54:4-3.72 et seq. As the purpose underlying the Home Improvement Law and the Tax Abatement Law are similar and deal in general terms with the same subject matter, the two statutes may be read in pari materia. Kennedy v. Allstate Ins. Co., 211 N.J.Super. 515, 519, 511 A.2d 1301 (Law Div.), aff'd, 213 N.J.Super. 137, 516 A.2d 1117 (App.Div.1986), certif. granted, 107 N.J. 71, 526 A.2d 153, certif. vacated, 107 N.J. 624, 527 A.2d 450 (1987). The Home Improvement Law defines “completion” as “substantially ready for the use for which it was intended.” N.J.S.A 54:4-3.73b. “Completion” is similarly defined in the Added Assessment Law. N.J.S.A. 54:4-63.1. For purposes of the Added Assessment Law, this Court has held that in determining whether an improvement is substantially completed, the “test is whether the building could be used for its intended use____” Litton Business Systems, Inc. v. Morris Plains Borough, 8 N.J.Tax 520, 538 (Tax 1986), aff'd, 9 N.J.Tax 651 (App. *502 Div.1988); Beranto Towers v. Passaic, 1 N.J.Tax 344, 348-49 (Tax 1980). Failure to obtain a certificate of occupancy does not negate a finding that an improvement is substantially ready for the use intended. Beranto Towers, supra, 1 N.J.Tax at 348-49.
When the city assessor visited the property on August 30, 1990, she observed that tires were being stored in the second-story addition and that the new fourth service bay was operational. When asked, Mr. Castagno indicated that both the second story and the fourth service bay had been operational for approximately two months. Since the property was being used for its intended purpose as of the end of June 1990, it must be deemed to have been completed as of that date, and the fact that work continued to be done on the building through the end of 1990 does not alter this conclusion. The taxpayer’s application for tax abatement was not filed with the City’s assessor until December 27, 1990, well beyond the 60-day filing deadline set forth in the City’s ordinance. Since the taxpayer failed to comply with the City’s deadline for filing an application for tax abatement, the City correctly denied the abatement.
Normally, it would be unnecessary to address the parties’ remaining arguments since the court has concluded that the abatement must be denied for untimely filing of the application. Since, however, the issues are somewhat novel, the parties’ remaining arguments will be addressed.
The second area in which the City’s ordinance potentially conflicts with the enabling statute is with respect to a written agreement for tax abatement. N.J.S.A 54:4^3.101 provides in part:
Upon approval of an ordinance authorizing an agreement for tax abatement for a particular project, the governing body may enter into a written agreement with the applicant for the abatement of local real property taxes. The agreement shall provide for the applicant to pay to the municipality in lieu of full property tax payments an amount annually to be computed by one, but in no case a combination, of the following formulas____
In authorizing exemptions and abatements, N.J.S.A 54:445.97 requires the passage of a general ordinance that
*503 shall provide for the exemption from real property taxation of improvements for a period of 5 years, and shall set forth procedures for entering into agreements for the abatement of real property taxes for projects, in accordance with the provisions of this act.
N.J.S.A. 54:4-3.99 states that after adopting a general ordinance, a municipality “may enter into agreements for tax abatement for projects____” Finally, N.J.S.A 54:4-3.106 requires that:
Within 30 days after the execution of a property tax abatement agreement as provided hereunder, a municipality shall forward a copy of such agreement to the Director of the Division of Local Government Services and to the Commissioner of the Department of Labor and Industry.
Quite clearly, the enabling statute contemplates the existence of an agreement for tax abatement, and no other mechanism for obtaining a tax abatement is provided.
In 1981, Asbury Park adopted Ordinance No. 2060. That ordinance required that an applicant for tax abatement
submit to the Tax Assessor a proposed agreement by which the applicant will pay to the City of Asbury Park in lieu of full property tax payments an amount annually to be computed according to one of the following three formulas.
[Asbury Park, N.J., Ordinance 2060, § 2b (Feb. 25, 1981)]
In 1988, the City amended the quoted portion of Ordinance No. 2060 to provide:
The governing body shall determine on a ease by case basis which of the following three (3) formulas shall be used to compute the payments in lieu of full property taxes. By such determination in granting said tax abatement the applicant shall enter into a written agreement for the payment of local real property taxes based upon the amount annually to be computed by the chosen formula.
[Asbury Park, N.J., Amended Ordinance 2060, § 2b (July 6, 1988)]
The amended ordinance appears to state that a grant of tax abatement encompassing one of the three statutory formulas (2% of cost, 15% of gross revenues, or a decreasing percentage of the taxes otherwise due) shall be deemed to be an agreement. The amended ordinance continues that the City shall approve or disapprove the application by resolution and, if it approves the application, “authorize the execution of the proposed agreement.” Id. at § 2d. Thereafter, a copy of the executed agreement is to be forwarded to the Division of Local Government Services and the Department of Labor and Industry. Id. § 2e.
*504 As indicated previously, the powers of local government are to be liberally construed in their favor and all necessary or implicit powers are to be inferred. As pertaining to the powers of municipalities regarding tax abatements, the Tax Abatement Law authorizes municipalities to adopt ordinances setting forth “procedures for entering into agreements for the abatement of real property taxes for projects, in accordance with the provisions of this act.” N.J.S.A. 54:4r-3.97. On the other hand, it is also true that a municipality may not contradict a policy of the Legislature, either by permitting what a state statute forbids or by forbidding what a state statute permits. Summer v. Teaneck Tp., 53 N.J. 548, 554, 251 A.2d 761 (1969). If a municipal ordinance conflicts with state law, either because of conflicting policies or operational effect, state law preempts the municipal ordinance. Overlook Terrace Management Corp. v. Rent Control Bd., 71 N.J. 451, 461, 366 A.2d 321 (1976).
As pertaining to the existence of a written agreement, the City’s amended ordinance is not flatly inconsistent with the Tax Abatement Law. The amended ordinance may not require a separate written agreement, but it deems such an agreement to exist by virtue of a grant of tax abatement combined with a written application for abatement. The statute’s requirement of a written agreement specifying a formula for tax abatement is effectively accomplished by combining the written application with the grant of tax abatement specifying the formula to be used. If it were clear that the City’s “deemed agreement” procedure conflicted with the underlying policy of the Tax Abatement Law, the ordinance might well be invalid.
The statute, however, does not specify the contents of a tax abatement agreement, and neither the statute nor its legislative history indicates why a separate written agreement should be required or, stated otherwise, why an agreement should not be deemed to exist by virtue of an approved application for tax abatement. As the City’s ordinance does not conflict with either the literal language or the underlying policies of the Tax Abatement Law, the ordinance should be sustained. Thus, the absence *505 of a separate tax abatement agreement does not invalidate a grant of tax abatement to Castagno Tires.
The final point on which the City’s ordinance diverges from the Tax Abatement Law involves the authorization of a tax abatement agreement. As previously indicated, N.J.S.A. 54:4-3.101 provides in part:
Upon approval of an ordinance authorizing an agreement for tax abatement for a particular project, the governing body may enter into a written agreement with the applicant for the abatement of local real property taxes.
[emphasis added]
The City’s amended ordinance, on the other hand, provides:
Within thirty (30) days from its receipt of a recommendation from the tax assessor, the City Council of the City of Asbury Park shall, by resolution, approve or disapprove the application for tax abatement on the said project and, if approving such application, authorize the execution of the proposed agreement between the City of Asbury Park and the person seeking the tax abatement. [Asbury Park, N.J., Amended Ordinance 2060, § 2d (July 6, 1988) (emphasis added)]
The enabling statute plainly requires the enactment of an ordinance authorizing a particular tax abatement, while the City ordinance permits the approval of a tax abatement application by means of resolution and, as previously indicated, the combination of an application and grant of tax abatement is deemed to constitute a tax abatement agreement.
Ordinances and resolutions are distinct. An ordinance is generally defined as “any act or regulation of the governing body of any municipality required to be reduced to writing and read at more than one meeting thereof and published.” N.J.S.A. 40:49-1. The same statute defines a resolution as “any act or regulation of the governing body of any municipality required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced.” Ibid. When a statute requires that an action be taken by ordinance, a resolution will not suffice. Oughton v. Board of Fire Comm’rs., 168 N.J.Super. 434, 448-49, 403 A.2d 69 (Law Div.1979), on reconsid., 178 N.J.Super. 633, 429 A.2d 1096 (Law Div.1980), aff'd in part, rev’d in part on other grounds, 178 N.J.Super. 565, 429 A.2d 1059 (App.Div.), certif. denied, 87 N.J. *506 367, 434 A.2d 1055 (1981); Public Service Ry. v. Camden, 95 N.J.L. 190, 192, 112 A. 421 (E. & A.1920); 5 McQuillin, Municipal Corporations § 15.03 at 44 (3d ed. 1973); cf. North Bergen Tp. v. Jersey City, 232 N.J.Super. 219, 224, 556 A.2d 1255 (App.Div.) (“[W]here a statute does not expressly require action by ordinance or resolution, the power may be exercised by either means.”), certif. denied, 117 N.J. 632, 569 A.2d 1334 (1989). As Judge Haines stated in Oughton, “[t]he reason for requiring an ordinance as opposed to a resolution is obvious: it informs the public, which thereby is given an opportunity to object or otherwise participate in the municipal legislative process.” Oughton, supra, 168 N.J.Super. at 449, 403 A.2d 69 (citations omitted).
The reason given by Judge Haines was likely the reason that the Legislature required in the Tax Abatement Law that a municipality authorize a tax abatement agreement for a specific project by ordinance rather than resolution. Consideration of the proposed abatement at more than one meeting of the governing body and its publication would give municipal residents an opportunity to object to a grant of tax abatement for a particular project, which could have the effect of increasing the tax burden on the remaining residents of the taxing district. Additionally, the public would be assured that tax abatements were being granted consistent with statutory standards rather than personal favor. Cf. Weehawken Env’t Comm., Inc. v. Weehawken Tp., 161 N.J.Super. 381, 399-401, 391 A.2d 968 (Law Div.1978). The City’s failure to require a specific ordinance authorizing abatement for a particular project is thus more than a technical or minimal defect. The defect is inconsistent with the Tax Abatement Law and with the rationale for requiring municipal action by means of an ordinance. In this respect, the City’s ordinance is invalid as conflicting with the enabling statute. Summer v. Teaneck Tp., supra, 53 N.J. at 554, 251 A.2d 761. The City’s failure to enact an ordinance authorizing a tax abatement agreement with Castagno Tires invalidates the grant of tax abatement by the Monmouth County Board.
*507 The City’s third argument is that the taxpayer can no longer qualify for an abatement under the Tax Abatement law because, with the enactment of the Five-Year Exemption and Abatement Law, L.1991, c. 441, N.J.S.A. 40A:21-1 et seq., the Tax Abatement Law was repealed.
The Five-Year Exemption and Abatement Law was approved on January 18,1992. Its purpose is to consolidate and expand the various exemptions and abatements applicable in blighted areas. N.J.S.A. 40A:21-2. Section 24 of the new law provides that the act will take effect immediately and that “exemptions and abatements may be granted, and tax agreements entered into, for the first full tax year commencing after enactment and for tax years thereafter.” Section 22 of the new law repealed the old Tax Abatement Law, effective January 18,1992. Section 23 of the new law provides:
No’ exemption or abatement granted, or tax agreement entered into, pursuant to an ordinance adopted pursuant to an act repealed by this act shall be affected or terminated by virtue of that repeal, but shall remain in effect for the time and under the terms granted as if the act authorizing the ordinances had not been so repealed.
[L.1991, c. 441, § 23]
For the reasons indicated above, the tax abatement granted under the old law by the county board was invalid. Thus the City is correct that there was no abatement under the old law and thus no abatement that could be continued under the new law.
This leaves the possibility of an application under the new law for any open tax years.[3] Although the new law incorporates many of the provisions concerning tax abatement agreements contained in the prior statute, it differs significantly in requiring that applications for both tax exemption and tax abatement be filed *508 within 30 days following completion of an addition or new construction for which exemption or abatement is sought. N.J.S.A. 40A:21-16. N.J.S.A 40Á:21-3e defines “completion” as “substantially ready for the intended use for which a building or structure is constructed, improved or converted.” That definition is similar to the definition of “completion” for purposes of the Added Assessment Law, see above at 501-502, and, as previously indicated, under this definition the addition to the subject property was “completed” by June 30, 1990, while Castagno Tires filed its application on December 27, 1990. Since Castagno Tires failed to file an application within 30 days of completion of the addition, it cannot meet the requirements of the new law anymore than it meets the requirements of the old.
Chapter 62 of Laws of 1993, approved March 4, 1993, permits municipalities to continue to grant tax exemptions and abatements under their pre-existing ordinances despite the enactment of the Five-Year Exemption and Abatement Law. An existing ordinance remains in effect until a new ordinance is adopted but in no event later than January 18, 1994. Chapter 62 has no effect on the outcome of this case. The continuing existence of Asbury Park’s Amended Ordinance No. 2060 does not cure the untimely filing of Castagno Tires’ abatement application nor the inconsistency between the ordinance and the state statute.
Since the taxpayer cannot comply with the application filing deadline of the Five-Year Exemption and Abatement Law, it cannot obtain a tax abatement under the new law for the remaining years in the five-year abatement period.
In conclusion, the judgment of the Monmouth County Board granting a tax abatement for 1992 and the ensuing three years must be reversed because the taxpayer did not timely file an application for tax abatement, and the City failed to enact an appropriate ordinance authorizing a tax abatement for the project. The taxpayer can no longer qualify under the Tax Abatement Law because that statute has been repealed, and it cannot qualify under the new Five-Year Exemption and Abatement Law because *509 it cannot comply with the requirement of filing an abatement application within 30 days of completion of construction.[4]
Judgment will therefore be entered denying a tax abatement for the subject property for 1992 and the ensuing three years.

 The county board judgment states that the abatement will amount to 20% in the first year, 40% in the second year, 60% in the third year, 80% in the fourth year, and 100% in the fifth year. Presumably, the indicated percentages refer to the tax payments that would otherwise be due. See NJ.S.A. 54:4-3.101c.

 As will be seen below, the addition was "completed" for purposes of the Tax Abatement Law by June 30, 1990.

 Abatements are effective under the new law, beginning with “the first full tax year commencing after enactment____” L.1991, c. 441, § 24. This would appear to be the 1993 tax year since the date of enactment of L.1991, c. 441 was January 18, 1992. Under § 11 of the new law, N.J.S.A. 40A:21-11, tax abatement is limited to the five full years next following completion of a project, which, in taxpayer's case, would be the 1991 through 1995 tax years.

 These conclusions make it unnecessary to address the City’s final argument that the statutory prerequisites for tax abatement must be in place by October 1 of the pretax year. Unlike the situation presented in B.P.U.M. Dev. & Urban Renewal Corp., supra, Asbury Park did not attempt to rectify the situation after the fact. There is no evidence that, during the pendency of this appeal, the City enacted an ordinance authorizing a tax abatement for the subject property. It is too late to do so now because the Tax Abatement Law has been repealed, and as indicated above, Castagno Tires cannot qualify under the Five-Year Exemption and Abatement Law because it cannot meet the filing deadline.
Two additional arguments of the taxpayer should be briefly mentioned. Taxpayer’s assertion that the City failed to respond to its application for abatement is not consistent with the evidence. The assessor responded barely a month after the application was filed, and the City responded through its attorney six months later. Nor was it improper of the assessor to forward the taxpayer an abatement application upon the taxpayer's request even though at the time the request was made the application was already late. Under NJ.S.A. 54:4-3.99 and N.J.S.A. 54:4-3.101, the governing body of a municipality is authorized to enter into tax abatement agreements. The assessor has no authority to grant or deny an abatement for untimely filing or any other reason. Under the City's ordinance, the assessor simply receives abatement applications and makes a recommendation to the City Council.