THE CITY OF TRENTON, DEFENDANT, v. TRENTON MASONIC TEMPLE ASSOCIATION, PROSECUTOR.

Argued October 8, 1930—Decided October 17, 1930.

Before Justices CAMPBELL and BODINE.

For the defendant, *Charles E. Bird.*

For the prosecutor, *Aaron V. Dawes* and *William Abbotts, Jr.*

PER CURIAM.

The writ brings up for review a judgment of the state board of taxes and assessments reviewing an order of the

Mercer county board of taxation which restores an assessment of taxes levied by the city of Trenton upon the lands and buildings of the Trenton Masonic Temple Association in that city.

The association was incorporated in 1921 as an association not for pecuniary profit. *Pamph. L.* 1898, *p.* 422. The charter provides that the association may: "Acquire all the assets and assume all the liabilities of Trenton Masonic Temple Association * * * purchase a site and erect, maintain and operate a Masonic temple in the city of Trenton, New Jersey, for the use and accommodation of the several Masonic bodies hereinafter mentioned and any other Masonic body hereinafter admitted, as well as the members therefor, for fraternal and charitable purposes; take and hold * * * by lease, gift, purchase, grant, devise or bequest, any property, real or personal, within or without the State of New Jersey, sell, convey, mortgage or otherwise dispose of the same; borrow money; make and issue promissory notes, bills of exchange, bonds, debentures, obligations and evidences of indebtedness and secure the same by mortgage, pledge or otherwise; do all and everything necessary, suitable, convenient, or proper for the accomplishment of any of said purposes or incidental thereto."

It appears from the agreed state of facts that the incorporators of the association are several Masonic lodges, who sought to provide suitable accommodations for Masonic purposes in Trenton. The purchase of the land and the erection of the building was financed by the individual members of the fraternity donating various sums for their respective lives and receiving in return a mortuary bond by virtue of which the Masonic Temple Association agrees to pay the principal amount contributed upon the death of the contributor, provided that at such time there is sufficient money in the mortuary fund to pay the same.

The individual member associations, from time to time, contribute various sums which are set aside for the eventual payment of such mortuary bonds upon the decease of the contributing member. This fund is held in trust, separate and apart from the other funds contributed, and is used only for

the purpose of paying off the mortuary bonds when due. Such contributions not being sufficient to pay the entire costs of the building, a mortgage was negotiated and the interest thereon is paid by the corporation and the amount thereof is included in the various proportionate amounts paid by the various member associations toward the upkeep of the building.

The building and land whereon the same is erected is actually and exclusively used in the work of twelve Masonic organizations, but the grand secretary of the grand lodge also maintains in the building an office for the transaction of his Masonic duties. The grand lodge contributes a sum calculated to be the proportionate cost of the heat, light, cleaning service, &c., of the rooms occupied by the grand secretary. No part of the building is rented out at any time, and no profit of any kind is made from the building or the lands on which it stands.

The association claims exemption under *Pamph. L.* 1927, *p.* 791, exempting "all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for religious, charitable or hospital purposes, or for one or more of such purposes * * * provided, further, that the foregoing exemptions shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this state and authorized to carry out the purposes on account of which such exemption is claimed."

Mr. Chief Justice Gummere said in *Sisters of Charity* v. *Cory,* 73 *N. J. L.* 699, 706: "The true rule of construction upon this subject is accurately stated in 12 *Am. & Eng. Encycl. L.* (2d ed.), 302, as follows: 'A grant of exemption from taxation, being in the nature of a renunciation of sovereignty (or, as some jurists have expressed it, being in derogation of the sovereign authority and of common right), must invariably be construed most strictly against the grantee, and can never be permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require.' It

has been declared and applied, not only by the United States Supreme Court, but by the courts of almost every state in the union, as will appear by a reference to the footnote in the *American and English Encyclopedia of Law*, which contains a citation of the decisions. We ourselves had declared this to be the true rule of construction prior to the promulgation of the decision in the Chatham case. *Nevin* v. *Krollman, Collector*, 9 *Vr.* 574; *State Board* v. *Morris and Essex Railroad Co.*, 20 *Id.* 193; *State Board* v. *Paterson, &c., Railroad Co.*, 21 *Id.* 446. The fact that the property involved in the present litigation is owned by a charitable organization and is devoted to charitable uses, affords no ground for excluding it from the operation of this rule."

The exemption created by the statute is of all buildings actually and exclusively used in the work of associations organized exclusively for the moral and mental improvement of men, women and children. The temple in Trenton is used exclusively by a number of organizations falling within the statutory category. If any one of the Masonic organizations owned and occupied the whole building the exemption would occur.

The title to the temple is held by a corporation organized by various Masonic lodges. No profits accrue to the landowner—the lodges contributing merely the proportionate share of the expense of operation. The corporation is a convenient legal entity in which to vest title to the building. But the corporation was not organized *exclusively for the moral and mental improvement of men, women and children.* It was organized for the purpose of affording accommodation for several Masonic lodges. The exemption of the statute is of all buildings actually and exclusively used in the work of corporations organized *exclusively* for a specific purpose. If the association seeks an exemption it must strictly comply with the legislative grant. The legislature has made the test of exemption not only the use of the building but the organization of the corporate owner—both must fall within the classification.

The judgment of the state board will be affirmed.