87 N.J. Super. 595 (1965)
210 A.2d 420
TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION, PETITIONER-RESPONDENT,
v.
THE ACADEMY OF MEDICINE OF NEW JERSEY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1965.
Decided May 20, 1965.
*597 Before Judges FOLEY, GOLDMANN and COLLESTER.
Mr. John R. Weigel argued the cause for appellant (Messrs. Steelman, Lafferty, Rowe & McMahon, attorneys, Mr. James L.R. Lafferty, of counsel).
Mr. Joseph D. Lintott argued the cause for respondent.
The opinion of the court was delivered by FOLEY, J.A.D.
The Academy of Medicine appeals from the final judgment of the Division of Tax Appeals denying it exemption from taxation of real property owned by it and located in the Town of Bloomfield.
The real property in question consists of two lots with buildings erected thereon. The lot at 307 Belleville Avenue has upon it a building used as a medical library and a barn used for storage. The lot at 317 Belleville Avenue has located thereon a building containing the offices of the Academy as well as meeting rooms, a building used by a caretaker, and a barn used for storage. For the tax year 1960 Bloomfield levied assessments on land and improvements totalling $19,000 *598 on the 317 Belleville Avenue property and $17,200 on the 307 Belleville Avenue property.
The Academy appealed the assessments to the Essex County Board of Taxation on the ground that the properties were exempt from taxation under N.J.S.A. 54:4-3.6, and, following a hearing on the appeal, the board allowed the exemption and set aside the assessments. The town then appealed to the Division of Tax Appeals, which reversed the judgment of the board and reinstated the assessments.
The Academy is incorporated pursuant to N.J.S.A. 15:1-1, as a nonprofit association. It has a membership of over 1,800 physicians and dentists and maintains the largest medical library in the State of New Jersey on the 307 Belleville Avenue lot. This library is not restricted to members of the Academy; it may be used by nonmembers, physicians and dentists, or any member of the general public. The Division found that no testimony was submitted to show the number of non-physicians and dentists who utilized the library facilities; and despite the assertion that the library has made its privileges available to the student body of the Seton Hall College of Medicine and Dentistry, it concluded that the use of the library facilities by the public was "incident to the services available to the membership of a professional society."
At the 317 Belleville Avenue address the Academy has meeting space for specialty groups in medicine, including groups not associated with the Academy, and this space is also utilized by the Academy to sponsor symposia that are open to the general public. There is also a room used to display the historical material of the Academy and of medicine in the State of New Jersey. Furthermore, it is not disputed that none of the Academy's activity is devoted to fostering or furthering legislation to protect or advance the status of or financial structure of the medical and dental profession.
However, the Academy does not have a teaching staff, an enrollment of students, or a regular course of instruction; nor does it award any degrees, diplomas or certificates. Relying on these facts, the Division found that the operation of *599 the Academy was designed primarily for the benefit of its professional members.

I.
The Academy raises on appeal the same points argued below, viz., that it is exempt from taxation under N.J.S.A. 54:4-3.6 for the reason that the properties are within the category "used for colleges, schools, academies or seminaries," and are actually and exclusively used in the work of and "organized exclusively for the moral and mental improvement of men, women and children."
In reviewing these contentions one guideline that must be followed is that the tax exemption statute is read strictly against the exemption claimant, Congregation B'Nai Yisroel v. Millburn Tp., 35 N.J. Super. 67, 72 (App. Div. 1955); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961), and all doubts are to be resolved against such claimants. Teaneck Twp. v. Lutheran Bible Institute, 20 N.J. 86, 90 (1955); International Missions, Inc. v. Borough of Lincoln Park, 87 N.J. Super. 170, 173 (App. Div. 1965).
In arguing that the properties owned by it are actually used for educational purposes such as are rendered exempt under N.J.S.A. 54:4-3.6, the Academy relies upon Princeton Twp. v. Institute for Advanced Study, 59 N.J. Super. 46 (App. Div. 1960), in which this court held, under the facts there presented, that the petitioner was exempt from taxation because it was a "college" within the meaning of N.J.S.A. 54:4-3.6. In doing so the court refused to restrict the meaning of "college" to any literal or conventional sense of the term; that is, rather than admitting of no deviation from the familiar pattern of teachers and pupils, courses of instruction, a conferring of degrees, and an extended discipline, the court declared that:
"The concept of a college is an organic one, taking on a varying aspect in different times and places." (59 N.J. Super., at p. 52) *600 Indeed, we declared that to impose a restrictive reading of "college" would be to subordinate and subvert the spirit of the legislation:
"To do so is to impose an arbitrary limitation on the legislative intent, to ignore the clearly discernible evolution in modern-day higher education toward less formal instruction, with greater emphasis on individual study and creative research  a development which has arrived at its greatest refinement in the activities of the Institute." (id., at p. 54)
The Academy contends that on the basis of the Institute for Advanced Study case its activities are educational, and it is a "college" within the broad definition set forth therein. However, we did not intend to assert that all institutions having some connection with the broad concept of education are to be deemed "colleges" in the sense intended by the Legislature in N.J.S.A. 54:4-3.6. Nor is that the view of the Supreme Court, for in Textile Research Institute v. Princeton Tp., 35 N.J. 218, 222-223 (1961), Justice Schettino declared that:
"* * * the word `college' does not embrace an organization which is controlled by a particular profit-making segment of society and which is devoted principally and primarily to research for the benefit of that industry."
The inquiry must be directed to the facts of each case, and Princeton Twp. v. Institute for Advanced Study, supra, is helpful to a resolution of the problem presented. In contrast to the case at bar, the Institute for Advanced Study had 22 permanent faculty members and a transient study body, designated as "members," of approximately 125. There was no formal instruction, but seminars were scheduled at least weekly. Moreover, the Institute had the power to make rules and regulations as to its governing body and, with respect to the duties of its members, including discipline and the granting of such degrees or diplomas as the Institute should decide upon (although such was not done since the members were all *601 at the post-doctorate stage). The goal of learning for its own sake was clearly manifest at the Institute, as judged by a partial list of its alumni "members," e.g., Albert Einstein, T.S. Eliot, Rheinhold Niebuhr, George F. Kennan, Arnold Toynbee, and Dr. Robert Oppenheimer. This court therefore concluded that the Institute:
"* * * fits well within the frame of those institutions which, for over a century * * *, have been the particular concern of the Legislature in extending tax benefits to colleges, schools, academies and seminaries, thereby encouraging the cause of education and research. * * * We conclude that to deny exemption in this case to an institution which stands at the very apex of American higher education, one which has attracted to Princeton some of the finest minds of our generation, would be a perversion of the legislative intention expressed in the first clause of N.J.S.A. 54:4-3.6." (59 N.J. Super., at pp. 55-56)
Although it cannot be denied that the Academy is performing a valuable service in giving instruction to already qualified physicians and dentists on a nonformalized basis, this does not establish it to be a "college" within the meaning of N.J.S.A. 54:4-3.6. It seems clear that while the public is benefited by the activities of the Academy insofar as its members will be better informed in their profession, the greater benefit inures to the members themselves, who will be better equipped to practice in specialized areas of their professions.
Since the exemptions are not favored and doubts are to be resolved against one claiming the exemption, we conclude that the Academy has not borne its burden of showing that it is a "college" within the meaning of N.J.S.A. 54:4-3.6.

II.
Alternatively, the Academy argues for an exemption from taxation on the basis of the statutory language of N.J.S.A. 54:4-3.6 which provides an exemption for:
"* * * all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children * * *."
*602 The proper application of the "exclusive use" test depends upon the facts in issue, Princeton Univ. Press v. Borough of Princeton, supra, 35 N.J., at p. 216, but an examination of precedent reflects the rule of strict statutory construction of the law of tax exemptions. Thus, in City of Trenton v. Trenton Masonic Temple, 8 N.J. Misc. 778, 151 A. 753 (Sup. Ct. 1930), affirmed 108 N.J.L. 419 (E. & A. 1932), it was stated that both the purpose and the object of the organization must be submitted to the exclusive use test. Moreover, in application of the test, a restrictive view has been the rule. In Sisters of Peace v. Westervelt, 64 N.J.L. 510 (Sup. Ct. 1900), affirmed 65 N.J.L. 685 (E. & A. 1901), it was held that a summer boarding house was not entitled to an exemption because, although profits were used to aid the needy, the real property was not used for charitable purposes. See also Girls Friendly Society of Pennsylvania v. City of Cape May, 20 N.J. Misc. 65, 24 A.2d 410 (St. Bd. Tax App. 1942). And see Teaneck Twp. v. Lutheran Bible Institute, supra, in which an exemption was denied with respect to three residences owned by the petitioner, which were occupied by a minister and his family; the court concluded that the "exclusive use" test was not met, holding that the minister's family life was the predominant utility of the property. That case was followed in International Missions, Inc. v. Lincoln Park, supra. Compare City of Asbury Park v. State, 41 N.J. Super. 504 (App. Div. 1956), in which a Salvation Army home used for retired and pensioned officers of the organization was held exempt since one of the purposes of the organization was taking care of the aged and the infirm; hence the use of the property for its aged or infirm former employees was within the statute. Vide Princeton Tp., County of Mercer v. Tenacre Foundation, 69 N.J. Super. 559 (App. Div. 1961), in which this court held that the residence of a director of a sanatorium and nursing home was "actually and exclusively used" in the work of the sanatorium and nursing home, where the maintenance of the residence *603 was necessary to the proper and efficient functioning of both institutions.
However, on the facts as hereinabove set out, we fail to find the exclusiveness of use required for exemption.

III.
At the oral argument we raised the question of whether or not the property located at 307 Belleville Avenue should be exempt from taxation as a "public library" within the meaning of N.J.S.A. 54:4-3.6 supra. In this respect the statute provides exemption for "all buildings actually and exclusively used for public libraries, * * * [and] the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent * * *." This contention was not raised below, nor was it urged on the appeal. Consequently, we directed the parties to file supplemental briefs covering the point.
The Academy now informs us:
"The entire structure at 307 Belleville Avenue, Bloomfield, New Jersey, is used for public library purposes. The rooms in the building are used for reading rooms or for offices for library personnel. No portion of this building is rented to any person or group. The Town of Bloomfield offered no testimony to show that the library was not actually and exclusively used as a public library. While there is a barn-type structure in the rear of the library property, it is used by a care-taker. This structure is a component building in the same sense as the home of the director in Princeton Township v. Institute for Advanced Study, 59 N.J. Super. 46 (App. Div. 1960)."
The town replies that:
"The library facilities in the main building are not devoted exclusively to public use. Use of these facilities by the public is incidental. The primary use of the medical library is for the benefit of the members of the association."
*604 The objects of the Academy, as stated in its certificate of incorporation, are as follows:
"The purposes for which the Association shall be formed are Pathological and Anatomical study and investigation, and the advancement and promotion of medical science, by such means as to them shall appear expedient and proper and also the maintenance of a public Medical Library."
In our opinion, the town's argument that the library use of the subject property was not a primary object of the Academy and therefore the library is not exempt, is not valid. The statute makes no such distinction. Nor do we think that the circumstance that there is present on the library property the barn-type structure used by the caretaker, of itself defeats the right to an exemption. However, we hesitate to direct an exemption upon the facts we have before us, since upon the taking of proofs factual questions may be presented. We therefore direct that the appeal as to Block 517, lot 27 (307 Belleville Avenue) be remanded to the Division of Tax Appeals for determination, upon such proofs as the parties desire to submit, as to whether the premises was on the taxing date actually and exclusively used as a public library.
The judgment of the Division on the appeal relating to Block 517, lot 23 (317 Belleville Avenue), reversing the action of the County Board and reinstating the assessment, is affirmed.
Remand, no costs. We do not retain jurisdiction.