LASSER, P.J.T.C.
Morris Township contests the grant of tax abatement by the Town of Morristown, under the Urban Eenewal Nonprofit Corporation Law of 1965 (UENCL) (N.J.S.A. 40:55077 et seq.) to the upper area of the Headquarters Plaza in Morristown. This matter is before the court on motion for summary judgment by plaintiff Morris Township and motion to dismiss by defendants, limited to the issue of exemption under UENCL. Headquarters Plaza consists of a lower area parking garage which provides the foundation for the upper area development consisting of three office towers, a hotel, a retail mall and a health club.
The initial application and financial agreement pursuant to N.J.S.A. 40:55C-91 and -92 granted tax abatement in 1979 to the lower area parking garage. A September 29, 1987 memorandum of agreement, among Morristown, Speedwell Develop *242 ment Corporation and the developers and their affiliated partnerships, granted tax abatement to all of the upper area improvements. These upper area improvements are known as Block 4901, Lots 1.01, 1.03, 1.04, 1.05, 1.06, 1.07 and 1.08 on the tax records of Morristown. Pursuant to the 1987 amendatory agreement, the assessor has listed these parcels as tax exempt for 1988. The exempt valuations as indicated on the tax records are as follows:
Lot No. Exempt Valuation
1.01 $ 27,588,000
1.03 27,588,000
1.04 8,503,500
1.05 22.438.200
1.06 21.256.200
1.07 5,176,700
1.08 5,745,300
Total $118,295,900
A portion of each of the above figures is attributable to improvements, and a portion is attributable to air rights. Tax abatement under URNCL is limited to improvements. The proper allocation of exemption to improvements is not in issue in the motions now before the court.
The 1988 tax rate is $1.57, and the common level of assessment as established by the Director of the Division of Taxation pursuant to N.J.S.A. 54:l-35b is 115.28%, with an upper limit of 132.57% and a lower limit of 97.99%.[1] Counsel for Morristown states that the exempt valuations for these lots do not include added assessments for 1988 for construction completed after October 1, 1987.
The Headquarters Plaza land is owned by the Town of Morristown and leased to Speedwell Development Corporation, a nonprofit urban renewal corporation. Speedwell has, in turn, leased portions of the plaza to defendants 2nd Roc-Jersey *243 Associates, 3rd Roc-Jersey Associates, 4th Roc-Jersey Associates, 5th Roc-Jersey Associates and LF Associates. These subtenants constructed the upper area improvements and have operated them since their completion.
In a letter to the Morris County Board of Taxation dated February 9, 1988, counsel for Morris Township sought review by that board of the action of the assessor in granting exemption to the subject parcels. Thereafter, on March 17, 1988, Morris Township filed petitions of appeal with the Morris County Board of Taxation contesting the exemptions. The petitions were considered by the board, and the exemptions were affirmed. The matter is now before the Tax Court on appeal from the action of the county board of taxation.
Morris Township has moved for summary judgment, contending that, as a matter of law, the 1987 amendatory agreement is invalid. Defendants filed cross-motions for dismissal of the complaint, contending that the amendatory agreement is valid. Defendants also challenge the jurisdiction of this court to hear and determine this matter and contend that the complaint was untimely filed. For the purpose of the motions, it was conceded by counsel that there are no facts in issue.
In February 1965, Morristown embarked on a federally-aided urban renewal project known as the “Speedwell Avenue Urban Renewal Project, N.J. R-159.” In June 1967, approximately ten acres in the central business district were designated a blighted area. Land acquisition and land improvements were made with federal funding under Title I of the Housing Act of 1959. An initial lease agreement made about 1970 dealt with the “1776 On The Green” office building, which is not involved in the subject case. After that building was constructed, litigation ensued between the original redeveloper and Morris-town which prevented further development from 1973 to 1978. In the spring of 1978, Robert S. Olnick and Lester Fisher were designated by Morristown as the new redevelopers, and a project contract was signed on May 30, 1979 and implemented beginning November 12, 1979. The project contract is a com *244 prehensive document consisting of a central agreement with 18 schedules which govern all elements of ownership, construction and financing of the revived urban renewal project.
The lower area as defined in the project contract is that portion of the project site on which the parking garage is to be built. The upper area is defined as the portion of the project site above the lower area. Included in the project contract is a lease agreement of November 12, 1979 between Morristown and Second Roc-Jersey Associates, a partnership, for the upper area for a term of 50 years, which agreement provides that the upper area is to be redeveloped by the lessee for the purposes specified in the urban renewal plan. The agreement states that the following will be constructed:
1. A motel with 200-300 rooms.
2. An office building containing approximately 150,000 square feet of office space.
3. A second office building containing approximately 150,-000 square feet of office space.
4. Approximately 200,000 square feet of retail space.
5. Additional improvements consisting of an additional building containing office or hotel uses, or both, and additional parking.
Schedule five of the project contract deals with the tax abatement arrangement among the parties.
On June 28, 1979, Speedwell Development Corporation made application for approval for tax abatement. The application states in part:
The proposed project is a multi-level parking garage for approximately 2,500 automobiles to be located on said lot to be leased from the Town ... in accordance with a proposed Project Contract concerning the site in question now being adopted by the Town of Morristown____
Said lot is within the Urban Renewal Area of the Town of Morristown, heretofore declared blighted. The garage proposed will serve as a foundation and supporting parking facility for a 250 room motel, two 150,000 square foot office towers and approximately 200,000 square feet of retail space, all as set forth in said proposed Project Contract, and will meet an existing need of the Town.
*245 The said garage project will contribute substantially to the economic health and development of the business area of Morristown, and thereby to the surrounding areas.
On November 12, 1979, the financial agreement required by N.J.S.A. 40:550-92 was entered into between Speedwell Development Corporation and Morristown. This agreement approved the urban renewal garage project and exempted the lower area parking garage from taxation for a period of 25 years, and in lieu of local property taxes on improvements, required the payment of an annual service charge of 15% of the gross annual revenue (the annual reimbursement by Roc-Jersey to Speedwell for amounts paid as land taxes on the lower area, the $50,000 annual rental income on the lower area and the annual garage rental received from Roc-Jersey plus insurance premiums paid by Roc-Jersey), but no less than the total taxes on the real property in the relevant area covered by the project in the calendar year immediately preceding acquisition of said area by Morristown.
When construction of the office towers was completed, AT & T became a substantial tenant. Its lease provided for an initial term of five years, with additional five-year renewal option terms. When the first five-year lease term expired, AT & T did not elect to exercise its renewal option for an additional five-year term. The hotel has not been operating on a profitable basis, and a large portion of the retail mall has remained vacant since its construction. With the possible loss of AT & T, the project was in danger of failing. For this reason, in September 1987, the agreement amending the project contract to grant tax abatement to the upper area was entered into, and thereafter, in March 1988, AT & T entered into a new five-year lease agreement for all 11 floors of the East Office Tower and four of the 11 floors of the West Office Tower, at a rental that was 20% below that of the previous lease. AT & T indicated that tax abatement was an essential ingredient in its agreeing to lease the property for an additional five-year period.
*246 I.
First, with respect to the jurisdiction of this court, I find that the Tax Court has jurisdiction to hear and determine this matter. The subject property was listed as exempt by the tax assessor, and Morris Township contested this exemption by filing petitions of appeal with the Morris County Board of Taxation. The Morris County Board of Taxation affirmed the exemptions, and complaints were filed with the Tax Court contesting the determinations of the Morris County Board of Taxation. This matter is clearly within the jurisdiction of the Tax Court under N.J.S.A. 54:51A-l(a) which provides that the Tax Court shall have jurisdiction to review the judgment or determination of the county board of taxation.
The jurisdiction of the Tax Court in this matter is further confirmed by § 97 of URNCL, which states:
Any such exemption shall be claimed and allowed in the same or a similar manner as in the case of other real property exemptions and no such claim shall be allowed unless the municipality wherein said property is situated shall certify that a financial agreement with an urban renewal nonprofit corporation for the development or the redevelopment of the property has been entered into and is in effect as required by the provisions of this act. In event that an exemption status changes during a tax year, the procedure for the apportionment of the taxes for said year shall be the same as in the case of other changes in tax exemption status during the tax year. [N.J.S.A. 40:55097]
It is clear that the URNCL contemplates a tax exemption which is to be reflected on the tax records of the municipality in the same manner as other tax exemptions, and I find that this exemption is to be reviewed by the Tax Court in the same manner as all other tax exemptions.
Defendants’ claim of untimely filing of the complaint is based on their contention that the complaint should have been filed in the Superior Court, Law Division, as an in lieu of prerogative writs action and that under R. 4:69-6(a) the time limit for filing such complaint is 45 days from the date of the action complained of. Defendants contend that the time expired 45 days after the September 29, 1987 date of the amendatory agreement. My finding that the Tax Court has jurisdiction to review the issue of tax exemption carries with it a finding that the deadline for contesting the tax exemption to the Morris County *247 Board of Taxation was August 15, 1988, N.J.S.A. 54:3-21, and the deadline for filing a complaint in the Tax Court to contest the judgment of the Morris County Board of Taxation was 45 days after the date of the determination of the county board of taxation. R. 8:4-l(a)(2). Based on these filing requirements, the complaint in this case was timely filed with the Tax Court.
I note that even if this complaint were required to be filed under R. 4:69, the § 6(c) provisions permitting the enlargement of time would be applicable because of the important public interest involved.[2]
II.
The tax abatement provisions of URNCL are found in N.J.S. A. 40:55091 to -99 (hereinafter §§ 91 to 99). The statutory scheme of these sections is to require an application for tax abatement approval “before proceeding with any project.” N.J. S.A. 40:55091. In this case, the application was for tax abatement of the lower area garage. No application was made for tax abatement of the upper area improvements. Thus, for the purpose of tax abatement, the lower area garage is the project. This project was approved by Morristown, and pursuant to § 92, a financial agreement was entered into between Morristown and the urban renewal nonprofit corporation on November 12, 1979 which provided for tax abatement of the urban renewal garage project only. This is the only portion of the project contract dated May 30, 1979, and related agreements, that provided for tax abatement prior to construction of the lower and upper areas.
May the parties to the tax abatement agreement amend the financial agreement to grant tax abatement to the upper area after both the lower and the upper areas have been completed? *248 Defendants argue that the statutory scheme must be liberally construed to accomplish the broad public purpose (the rehabilitation of blighted areas) specifically authorized by the New Jersey Constitution in Art. VIII, § III, par. 1.
Defendants rely on Levin v. Tp. Comm. of Tp. of Bridgewater, 57 N.J. 506, 274 A.2d 1 (1971) and Jersey City Chap. Prop. Owner’s, etc., Assoc. v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969), as authority for the proposition that the URNCL, which was enacted to implement the constitutional objectives, should be liberally construed. However, these cases do not involve tax exemption; they involve only the declaration of blight. The Levin case involved declaration of blight of a parcel of land which was largely undeveloped. In that case, the Supreme Court held that the powers granted to the municipality to declare an area blighted were broad and should be liberally construed. The Jersey City case involved air space above railroad tracks near Journal Square, and the Court held that air space comes within the term “land” used in the statute, and therefore air space is subject to a declaration of blight even though the statute contains no specific reference to air space.
The subject case involves tax exemption. All matters of tax exemption involve the application of broad public policy concepts, yet it is well recognized in testing entitlement to tax exemption that legislative requirements must be strictly construed. The general rule in interpreting tax exemptions is that such exemptions are to be strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public tax burden. Taxation is the rule, and exemption is the exception to the rule. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952). The burden is upon the claimant to clearly bring himself within an exemption provision. Ibid. Tax exemptions are not favored, and doubts *249 are to be resolved against one claiming the exemption. Bloomfield v. Academy of Med. of New Jersey, 87 N.J.Super. 595, 210 A.2d 420 (App.Div.1965), rev’d on other grounds 47 N.J. 358, 221 A.2d 15 (1966).
Section 96 of URNCL provides that modifications of the financial agreement may be made from time to time by agreement between the governing body of the municipality and the urban renewal nonprofit corporation. A distinction must be made between “modification” of the agreement and “extension” of the agreement. In 1986, § 97 of the statute was amended by the Legislature to permit an extension of the financial agreement for 15 years beyond its original term. Thus, there is specific legislative authority for an extension of the period of exemption of a financial agreement, but there is no specific legislative authority for amending the financial agreement to exempt additional property after construction has been completed.
The statute requires that an application for tax abatement be made before proceeding with a project. Although I am aware of the financial circumstances that existed in 1987 at the time of the amendatory agreement, I am limited by the provisions of the statute, which are clear and unambiguous. The Legislature has required that the application be made before proceeding with a project. These words are not susceptible to an interpretation which would change the word “before” to “after.” Even if this court were permitted to liberally construe the legislation, the words of the statute cannot be rewritten to change their meaning. I conclude that the Town of Morristown is without authority to amend the financial agreement to grant tax exemption to the upper area of the Headquarters Plaza.
Morris Township’s motion for summary judgment on the exemption issue is granted. Defendants’ motion to dismiss the complaint is denied. The case will proceed on the valuation issue.

Although the common level and upper limit percentage exceed 100%, the subject property cannot be assessed at more than 100%. Abe Schrader Corp. v. Secaucus, 8 N.J. Tax 390 (Tax Ct.1986).

If the Tax Court did not have jurisdiction to hear this matter, a July 10,1981 order of the New Jersey Supreme Court provides for disposition of actions in lieu of prerogative writs involving tax matters by a judge of the Tax Court temporarily assigned to the Law Division, Superior Court by standing order. See Pressler, Current N.J. Court Rules, Comment R. 8:2 (1988).