NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 943-4761
TeleFax:   (609) 984-0805
taxcourttrenton2@judiciary.state.nj.us

June 12, 2017

Eileen Toll, Esq.
Schneck Law Group
301 South Livingston Avenue, Suite 105
Livingston, New Jersey 07039

Emil Philibosian, Esq.
Samantha Catanese, Esq.
Hoagland Longo <u>et al.</u>
40 Paterson Street
New Brunswick, New Jersey 08901

     Re: 595 New Brunswick, L.L.C. v. City of Perth Amboy
       Block 185, Lot 15
       <u>Docket Nos. 014534-2015; 014535-2015; 001119-2016</u>

Dear Counsel:

  This is the court's decision on the parties' respective motions for summary judgment in the

above captioned matters.  The only issue is whether defendant ("City") improperly denied a tax

abatement for the above captioned property ("Subject"), a building previously used as a medical

office and converted by plaintiff to a multiple dwelling.  The City contended that it does not grant

abatements for conversion of commercial property to residential use.  Plaintiff contended that

neither the abatement application form nor the governing laws prohibits grant of abatement for

conversion.

  After oral arguments, the court raised two issues: (1) whether this court had jurisdiction to

grant the abatement that was denied by the City Council by resolution of its governing body; and

*

(2) whether the City had authority to grant/deny any abatements since the Ordinance governing the same was promulgated more than ten years ago and was never readopted, where the controlling law, N.J.S.A. 40A:21-4 allows an ordinance to exist for only ten years unless readopted.

The parties then filed briefs addressing these issues. Both agreed that the Tax Court has jurisdiction, but disagreed as to the effect of the expired Ordinance.

The court finds that it lacks subject matter jurisdiction because the relief being sought is to review the determination and resolution of the governing body/City Council to deny plaintiff an abatement. Although the abatement concerns local property taxes and can be a "tax matter" for purposes of N.J.S.A. 2B:13-2, it is not a decision of a tax matter by "a county or municipal official," which the statute allows this court to review. Therefore, as to this issue, the court will transfer the matter to the Superior Court. Once that court decides whether the denial was proper given the expiration of the City's Ordinance, this court can decide the valuation challenge to the added assessments for 2014 and 2015, and the regular assessment for 2016.

**ABATEMENT LAW**

The Five-Year Exemption and Abatement Law ("Five Year Law") permits any taxing district the authority to provide tax exemptions and/or abatements. N.J.S.A. 40A:21-1 et seq. The "purpose" of the Five Year Law is "to permit municipalities the greatest flexibility possible within the constitutional limitations to address problems of deterioration and decay while preserving the salient features of the existing tax exemption and abatement programs." N.J.S.A. 40A:21-2.

Pursuant to the Five Year Law, a municipality can provide tax exemptions and/or abatements through adoption of an ordinance. N.J.S.A. 40A:21-4. That ordinance can specify the "eligibility or noneligibility of . . . multiple dwellings, or commercial . . . structures" for such preferential treatment. Ibid. The municipality can "differentiate among these types of structures,"

2

and as "to a type of structure, . . . specify the eligibility of improvements, conversions, or construction, or all of these," for an exemption or abatement.  Ibid.

If an ordinance provides an "exemption from taxation of improvements to commercial . . . structures," there are certain conditions and time limitations.  N.J.S.A. 40A:21-7.  In this regard, the ordinance may either (1) grant an exemption "for all commercial . . . improvements," (2) "define categories of improvements which shall be approved by the assessor upon proper application, and other categories of improvements which may be exempted only after review, evaluation and approval by the municipal governing body," or, (3) "authorize exemption for improvements on an individual basis after review, evaluation and approval of each application by the governing body."  Ibid.

A municipality can also enter into "tax agreements . . . for construction of commercial or industrial structures, or multiple dwellings, or both," with specific procedures to be followed in this regard.  N.J.S.A. 40A:21-8 (emphasis added).  Those procedures are contained in N.J.S.A. 40A:21-9 to 21-12 (contents of application; formula for payments; duration, compliance with other laws, valuation; failure of compliance).

The statute requires the assessor to "determine, on October 1 of the year following the date of the completion of an improvement, conversion or construction, the true taxable value thereof." N.J.S.A. 40A:21-13.  The tax "for the tax year in which the project is completed" should be on the assessed value "for the current tax year" less the abatement amount, if any, "and pro rated."  Ibid. Added to this is the value of any portion of the "improvement, conversion or construction not allowed an exemption . . . also pro rated."  Ibid.  This determination "by the assessor" must be carried forward for the subsequent four tax years, "[s]ubject to the provisions of the adopting

3

ordinance." Ibid. For the "final tax year in which the exemption or abatement expires," the assessment must be appropriately "pro rated." Ibid.

N.J.S.A. 40A:21-16 states that "[n]o exemption or abatement shall be granted . . . except upon a written application . . . filed with and approved by the assessor of the taxing district wherein the improvement, conversion alteration or construction is made." The application should be on a "form prescribed by the . . . Division of Taxation." Ibid. However, "no application for exemptions or abatements shall be filed" more than 10 years after the ordinance is adopted, unless that ordinance "is readopted by the governing body." N.J.S.A. 40A:21-4.

**THE CITY'S ABATEMENT CODE ("ORDINANCE")**

The City adopted Ordinance No. 676-93 on July 6, 1993.[1] It provides for tax exemptions and abatements pursuant to the authority of the Five Year Law. Initially, the Ordinance allows the City to "enter into agreements" with property owners to provide tax abatements and/or exemptions "for improvements to existing commercial, industrial or multiple-dwelling structures or for the construction of commercial, industrial or multiple-dwelling structures." §402-1.[2] In this connection, all the definitions of N.J.S.A. 40A:21-3 are incorporated for purposes of, and pursuant to the City's "power to enter into tax abatement/exemption agreements." Ibid.

Section 402-10 of the Ordinance provides that the "determination and duration" of an exemption and/or abatement for "improvements to commercial . . . structures" is governed by N.J.S.A. 40A:21-7, and that "all tax abatement/exemptions applied for and granted shall be pursuant to and as provided by law."

---

[1] Per the Editor's note, the 1993 Ordinance superseded Ordinance 298-82 adopted November 11, 1982, which in turn had superseded Ordinance 150-77 adopted May 3, 1977 (and amended June 13, 1979 by Ordinance 216-79).
[2] The section references the "Act" as authority for entering into the agreements. The Editor's Note clarifies that the "'Act' refers to N.J.S.A. 40A:21-1 et seq."

4

The Ordinance also incorporates the Five Year Law's provision of a mandated application by the taxpayer as a condition precedent to the grant of an exemption or abatement, however, without the requirement of the assessor's approval of the application. Thus, §402-5(A) and (B) of the Ordinance provide that "[no] abatement and/or exemption shall be granted . . . except upon written application [on the Division of Taxation's prescribed form]" which has to be "filed with the Assessor and the Director of Economic and Community Development," and which has to be reviewed and approved by the City Council. See also §402-4 (the City Council determines "whether an abatement and/or exemption improvements or new construction shall be granted," after its individual review of each application). However, the assessor is required, as part of his or her duties, to "implement" the Five Year Law "in the City," and to "accept and receive applications for exemption of improvements from taxation," and record/retain them as part of the tax records. §402-8. The City has never readopted the 1993 Ordinance.

**FACTS**

Plaintiff is owner of the Subject located in the City. It is managed by Paramount Property Management, a real estate development and management company. Prior to 2014, the Subject was a 2-story structure and used as a medical office building.[3] When plaintiff purchased the Subject, it was vacant.

Since its attempts to market the vacant space for office use were unsuccessful, plaintiff sought to convert the same into residential units. In July 2012, by a resolution, the City approved plaintiff's application for site plans and zoning variances (since the front of the Subject was located in the Business Zone whereas the rear of the building was located in the Residential zone), which

---

[3] Prior to 2012, Amboy Medical Arts Building Association owned the Subject, and had appealed the 2006-2010 assessments. Plaintiff purchased the Subject in February of 2012 per the information on the website hosted and maintained by the New Jersey Association of County Tax Boards (www.njactb.org).

5

proposed to convert the vacant office building into twelve (12) residential apartments with off-street parking. The resolution stated that the Board "found" that there were "special reasons to support" plaintiff's application, since it proposed "the proper use of existing land, and the otherwise unsightly building . . . will be aesthetically improved . . . avoiding abandonment of use." The resolution also observed that plaintiff's proposal would be a "benefit to the community."

By 2014, the construction was complete and the apartments fully occupied. On July 15, 2014, plaintiff applied to the City for a tax abatement using the form prescribed by the New Jersey Division of Taxation, titled State of New Jersey Application for Exemption and/or Abatement for the Improvement, Conversion or Construction of Property Pursuant to . . . N.J.S.A. 40A:21-1 . . . and Authorized by Municipal Ordinance." Plaintiff circled Option B as the basis for the claim, which option read "The subject property is a *multiple dwelling, commercial or industrial structure*:" under which plaintiff circled the following description, "*Conversion or conversion alteration* of building or structure to a *multiple dwelling*."[4] Plaintiff noted June 30, 2014 as the date of "completion of new *construction, conversion, or improvement*," at a cost of $600,000 and described the nature and type of construction, conversion, or improvement as follows: "vacant former medical office building was converted/improved into twelve (12) new residential apartments . . . . The property is fully leased."

The minutes of the February 25, 2015, public meeting held in this regard reflected that plaintiff's application was placed on the agenda "as a late starter," and was resolved to be denied. In response to a public member's comment, "what property is this and why were they denied," the assessor had replied that "it's the former medical examiner's building. It went from commercial

---

[4] The other choices were "*Improvement* to a *multiple dwelling*; *Improvement* to a *commercial or industrial* building or structure; *Construction of multiple dwelling* under tax agreement; *Construction of commercial or industrial structure* under tax agreement."

to residential." The assessor stated that she was not "personally aware if plaintiff attended" this meeting. The City Council then passed a resolution stating that the governing body had "determined that" plaintiff's application "for the conversion of commercial property into residential units . . . does not warrant" tax abatement and should "not be granted."

The assessor certified that prior to the February 25, 2015 public meeting she had met with the City Council's governing body in a closed session during the caucus meeting on February 23, 2015. At the meeting, she stated that she presented the "position of the Assessor's office regarding the abatement application." Due to issues of confidentiality yet to be finalized, the assessor certified that the minutes of the closed session were not available.

The assessor averred that it was "standard procedure" for her to review applications prior to sending them for review of the City Council, and that she had reviewed them pursuant to Sections 402-4 and 402-5 of the Ordinance. In her "experience," she stated, it was the City Council's "policy . . . to grant abatements for commercial or industrial properties which are converted, renovated or whose use is expanded." She clarified that this did not apply to the Subject "because the use of the building was changed from its original construction of office space to a residential apartment building. This was not a rehabilitation project . . . [but] a change in the use that required variances." She averred that as far as she knew, the City Council had not "approved abatements for properties which use is converted from commercial to residential," and that the assessor's records showed that only three abatements had been granted to commercial properties from 2005 onwards. She also stated that she believed and understood the Ordinance was "established to promote commercial development," thus, it did not adopt the provisions of the Abatement/Exemption Law which included "commercial to residential 'conversion.'"

7

By letter dated February 27, 2015, the City's assessor notified plaintiff that the City Council had denied plaintiff's "application for the 5-year phase-in tax abatement" by resolution. Therefore, the Subject would be "assessed through an added abatement (sic) process." The assessor imposed an added assessment of $825,900 for tax year 2014 and 2015 (pro rated for two months in 2014).

**PROCEDURAL HISTORY**

On November 16, 2015, plaintiff filed a direct appeal for tax year 2014 to this court. On the face of its complaint, it stated that it was contesting the action of the Middlesex County Board of Taxation ("County Board") as to the assessment, or contesting the assessment if a direct appeal, on grounds the assessment exceeded the property's true value. On the accompanying Case Information Statement ("CIS"), plaintiff noted that it was appealing the added assessment, and checked the box that it was not claiming an exemption. It then filed an amended complaint on February 25, 2016 to include a rider, which stated as follows:

> Plaintiff alleges that the property in question is entitled to exemption/abatement from local property taxation/assessment and that Plaintiff applied to the Defendant taxing district for such exemption/abatement in accordance with all applicable laws, rules, regulations and requirements, which application was wrongly denied by Defendant taxing district.
>
> WHEREFORE, Plaintiff demands judgment exempting said property from local property tax assessment and such other relief as may be appropriate, including but not limited to granting abatement from local property taxation/assessment to said property and/or reversing the denial of Plaintiff's application for such exemption/abatement by Defendant taxing district.

However, the amended CIS continued to check the box that an exemption was not being claimed.

On November 16, 2015, plaintiff filed a direct appeal for tax year 2015 with this court. On the face of its complaint, it stated that it was contesting the action of the County Board as to the assessment, or contesting the assessment if a direct appeal, on grounds the assessment exceeded

8

the property's true value. On the CIS, it checked the box that it was <u>not</u> claiming an exemption, and was challenging the added assessment. It then filed an amended complaint on February 25, 2016 (the same day as the amended complaint for 2014 was filed) to include the rider reproduced above. The amended CIS continued to check the box that an exemption was not being claimed.

On the same day, February 25, 2016, plaintiff filed a direct appeal for tax year 2016 with this court. On the face of its complaint, it stated that it was contesting the action of the County Board as to the assessment, or contesting the assessment if a direct appeal, on grounds the assessment exceeded the property's true value. This time, plaintiff included the same rider as to the abatement reproduced above. It left blank the box on the CIS whether an exemption was being claimed.

On or about August 5, 2016, plaintiff moved for summary judgment seeking to void the added assessments for 2014 and 2015, and to reduce the 2016 assessment to $450,000. At the court's request, post-oral argument of the motions, the parties briefed the issues of whether (1) this court had subject matter jurisdiction, and (2) the effect, if any, of the undisputed fact that the City never readopted its 1993 Ordinance after ten years.

**ANALYSIS**

*A. Subject-Matter Jurisdiction*

<u>N.J.S.A.</u> 2B:13-2(a)(1)-(3) provide that the Tax Court is empowered to "review actions or regulations with respect to a tax matter of" a "State agency or official," or a "county board of taxation," or a "county or municipal official." In addition, this court can decide matters cognizable in the Superior Court, and transferred to the Tax Court "which raise issues as to which expertise in matters involving taxation is desirable." <u>N.J.S.A.</u> 2B:13-2(b); <u>see also</u> <u>R.</u> 8:2(a). Further, if a statute provides jurisdiction over "any other matters," then this court can decide the same. <u>N.J.S.A.</u>

9

2B:13-2(c). In the cases in which the court does have jurisdiction, it can, "subject to law, . . . grant legal and equitable relief so that all matters in controversy between the parties may be completely determined." N.J.S.A. 2B:13-3(a).

There is no question that this court can hear plaintiff's challenge as to the valuation aspect of its complaints for the years at issue. However, whether or not it can decide the correctness of the City Council's denial of the abatement must be examined. Plaintiff argued that jurisdiction is proper because the denial of abatement is a tax matter pursuant to N.J.S.A. 2B:13-2, and further, it is "aggrieved" by the assessments on the Subject for purposes of N.J.S.A. 54:3-21. Plaintiff also notes that this court's jurisdiction includes "any powers that may be necessary to effectuate its decisions," N.J.S.A. 2B:13-2(d), and within that jurisdiction, it can resolve "all matters in controversy" as to assessments pursuant to N.J.S.A. 2B:13-3. The City agrees that the "original motivation" of plaintiff was to challenge the assessments on the Subject under N.J.S.A. 54:3-21, thus, this court can exercise jurisdiction to "effectuate relief so all the matters in controversy can be settled" under N.J.S.A. 2B:13-2(d).

The controlling statute, the Five Year Law, is silent on proper legal forum to challenge denials of tax exemptions or abatements. While the statute leaves to it to Department of Community Affairs to "promulgate rules and regulations to effectuate the purposes of the" Abatement Law, there are no such regulations addressing this query.

The Assessor's Handbook states that "denials" of "five-year limited exemption/abatement" must be appealed to the County Board of Taxation. See Handbook for New Jersey Assessors, Local Property, Division of Taxation, §§502.09, 1101.06 (4th ed. revd. 2015). Here, however, there was no such appeal, consequently, no judgment of and from the County Board.

10

The cases addressing the Abatement Law in the Tax Court either assumed subject matter jurisdiction because the appeal was from a county board of taxation judgment, which this court is authorized to review, or assumed the same without any discussion in this regard. Few cases deemed the relief as in the nature of an action in lieu of prerogative writs.[5]

Thus, where the taxpayer had timely appealed the denial of a five-year tax abatement to the county board, the Tax Court concluded that since the county board had "jurisdiction" to decide the same, and the court could review the county board's judgment, the court was "not deprived of jurisdiction to dispose of the case on its merits." City of Asbury Park City v. Castagno Tires, 13 N.J. Tax 488, 497 (Tax 1993). This is especially since the taxpayer "fits within the language of N.J.S.A. 54:3-21 authorizing appeals to the county board as a[n 'aggrieved'] taxpayer."[6] Ibid.

Similarly, in Township of Morris v. LF Associates, 10 N.J. Tax 240 (Tax 1988), the assessor listed properties as tax exempt due to an agreement entered under the Urban Renewal Nonprofit Corporation Law. Id. at 242. The county board of taxation affirmed those exemptions on appeal by the municipality. Id. at 243. The Tax Court held that it "clearly" had jurisdiction to review the county board judgment. Id. at 246. Further, since the particular law provided that exemptions were to be treated in the "same or a similar manner as in the case of other real property exemptions," the Tax Court could review the exemption "in the same manner as all other tax

---

[5] See In re Application of Li Volsi, 85 N.J. 576, 593-94 & n.18 (1981) (explaining that an in-lieu action encompasses cases for which "traditional prerogative writs" such as "certiorari, quo warranto, prohibitions, and mandamus," were used, thus, only applies to "cases where a remedy was available under a traditional prerogative writ"). The Court noted that a writ of certiorari "was used . . . to review the actions of inferior tribunals such as administrative agencies;" while "[m]andamus was a specific writ used for requiring government officials to carry out required ministerial duties[,] . . . [q]uo warranto was used only for challenging the right of an individual to hold a public office[,] . . . and [p]rohibition was the traditional writ used to block proceedings where a tribunal was acting 'manifestly beyond its jurisdiction.'" Id. at 594 n.18.

[6] The court was applying N.J.S.A. 54:4-3.95 et seq., which was the predecessor to the Five Year Law. City of Asbury Park, supra, 13 N.J. Tax at 494 (noting that the Abatement/Exemption Law "replaced and repealed N.J.S.A. 54:4-3.95 et seq., effective January 18, 1992").

exemptions." Ibid. The court therefore rejected the argument that a challenge to the exemption should have been filed in the Superior Court "as an in lieu of prerogative writs action" within the time limit under R. 4:69-6(a) (45 days from the date of the action complained of). Ibid. The court noted that even if it lacked jurisdiction to hear an action in lieu of prerogative writ "involving tax matters," it could do so by a Tax Court judge being temporarily assigned to the Superior Court pursuant to the Supreme Court's standing order. Id. at 247, n.2;[7] see also Town of Secaucus v. City of Jersey City, 19 N.J. Tax 10, 22 (Tax 2000) (citing to N.J.S.A. 40:55C-65; 40A:20-12).

In Lowe's Home Ctr., Inc. v. City of Millville, 25 N.J. Tax 591, 594 (Tax 2010), the court concluded that the municipality erroneously attempted to "rescind a five-year tax exemption and abatement awarded by its tax assessor and ratified by its governing body for property in an area in need of rehabilitation." The issue of the court's subject matter jurisdiction was not addressed.

However, in Sumo Property Management, L.L.C. v. City of Newark, 21 N.J. Tax 522 (Law Div. 2004), the Tax Court transferred the initially filed tax court complaint challenging the county board of taxation's judgment which affirmed the assessment and denial of a five-year abatement. As here, the abatement was denied pursuant to a local ordinance, which was promulgated pursuant to the Five Year Law. Id. at 524. Unlike here, it was the assessor who denied the abatement on

---

[7] The Supreme Court's Standing Order dated July 10, 1981, which was reproduced in Alid, Inc. v. Township of North Bergen, 89 N.J. 388-89 (1981) reads as follows:

ORDERED that pursuant to N.J. Const. (1947), Art. 6, § 2, para. 3; Art. 6, § 5, para. 4 and Art. 6, § 7, para. 2, when relief in lieu of a prerogative writ is sought with respect to any matter then pending in the Tax Court involving a state or local tax, including enforcement of an order or judgment of the Tax Court or county board of taxation, the action shall be transferred to the Superior Court, Law Division, and, for the purpose of having such claim adjudicated, unless good cause to the contrary is shown, the matter shall be heard by a judge of the Tax Court who has been temporarily assigned to the Superior Court, Law Division, by the Chief Justice. FURTHER ORDERED that if an action in lieu of prerogative writ is brought in the Superior Court, Law Division, relating to any judgment of or any action pending in the Tax Court, the Assignment Judge may assign the matter to a judge of the Tax Court who has been temporarily assigned to the Superior Court, Law Division, by the Chief Justice. FURTHER ORDERED that all filings in the Superior Court, Law Division and the Tax Court in matters covered by this Order shall be docketed and retained in accordance with procedures adopted by the Clerks of the affected courts, subject to the approval of the Administrative Director of the Courts.

grounds the property did not qualify for the same. Ibid. Unlike here, the abatement denial had yet to be approved by the City Council and Mayor. Id. at 525. The Tax Court found that allegations as to "wrongful denial" of the abatement/exemption sought an "in lieu of prerogative writs relief," since it would "require" the Tax Court "to ultimately compel the [municipality] to enter into an abatement agreement with taxpayer for a five-year period." Id. at 526. Upon transfer to the Superior Court, the matter was transferred back to the Tax Court, which then (by the judge as temporarily assigned to the Superior Court) rendered the decision. Id. at 527.[8]

Similarly, in Del Priore v. Township of Edison, 26 N.J. Tax 502 (Law Div. 2012), certif. denied, 216 N.J. 363 (2013), the Tax Court, by a judge temporarily assigned to the Superior Court, decided a challenge to an action of the township's council that denied plaintiff taxpayer a retroactive refund of local property taxes. The court noted that the "the denial of a tax refund [was] not the action of the [county board of taxation] which [had] properly dismissed plaintiff's complaint for lack of jurisdiction." Id. at 516. Nor was it an act "of a municipal official," but was that "of defendant's governing body." Ibid. Such an action is akin to "relief in the nature of mandamus" which is "cognizable only in the Law Division of the Superior Court." Ibid. (citing and quoting Alid, Inc. v. Township of North Bergen, 180 N.J. Super. 592 (App. Div.), appeal dismissed, 89 N.J. 388 (1981)).

---

[8] In Corbacho v. Mayor and Council of City of Newark, 16 N.J. Tax 240, 244-45 (App. Div.), certif. denied, 149 N.J. 141 (1997), the court held that the Superior Court did not err in not transferring an action in lieu of prerogative writ challenging the denial of a tax abatement to the Tax Court since such actions are fully cognizable in the Superior Court. The court noted that it was not deciding whether the Tax Court "would have" had jurisdiction since the matter had been fully tried at the Superior Court. Id. at 244. It also noted that the matter was not "a challenge to the accuracy of the assessments upon plaintiffs' properties or any other action by the Tax Assessor," but questioned the "administrative action by Newark's Corporation Counsel and/or a committee of the municipal council denying their applications for tax abatements," which was a "a challenge to the kind of municipal action which traditionally has been subject to the Superior Court's jurisdiction over actions in lieu of prerogative writs." Id. at 245-46.

13

This case presents a mix of facts thus, of the applicability of the above precedent. Factors indicating ability to hear the case are: (1) The abatement of taxes concerns local property taxes which need not be paid upon the assessor-determined value of the erected or converted improvements, thus, touches upon "tax matters," for purposes of N.J.S.A. 2B:13-2(a). (2) The assessor, a municipal official, has a role in the abatement grant/denial process since pursuant to the City's Ordinance, she must accept abatement applications and "implement" the Five Year Law. The facts here also show that the assessor participated in the grant/denial process with the City Council. Thus, to some extent, a municipal official has acted for purposes of N.J.S.A. 2B:13-2(a).

Factors indicating non-ability to hear the case are: (1) The denial of plaintiff's abatement application was by the City Council's resolution passed by the City's governing body. The City Council or the governing body is not a municipal or county official for purposes of N.J.S.A. 2B:13-2(a). See DelPriore, supra. (2) Plaintiff did not appeal the denial of the abatement to the County Board, an entity whose actions or determinations are reviewable by the Tax Court. Thus, there is no determination or action of the County Board for this court to review. (3) There is no provision in the Five Year Law similar to the cases interpreting the Long Term Exemption Law. See Town of Secaucus, supra, 19 N.J. Tax at 22 (using the language in N.J.S.A. 40:55C-65; 40A:20-12 that the real property tax exemptions granted under those statutes required the exemptions be treated just "as all other tax exemptions," to hold that the Tax Court may decide the merits of the exemptions in those cases).[9] (4) As in Sumo Property, supra, plaintiff's property was deemed not to qualify for an abatement under the Five Year Law, yet the matter was transferred to the Superior Court.

---

[9] Now, however, neither the taxpayer nor a municipality can "appeal either an assessment or an exemption or both that is based on a financial agreement subject to the provisions of the 'Long Term Tax Exemption Law' [N.J.S.A. 40A:20-1 et seq.] under" the local property tax appeals statute. See N.J.S.A. 54:3-21(b).

Of these four factors indicating this court's inability to decide the merits of the abatement denial, the strongest is that the denial was the decision of the City Council by resolution of the governing body. It is true that the abatement affects the assessment and the amount of local property taxes imposed/collected (since the assessed value of the new improvements will not be taxed, or will be taxed at a certain lower rate). However, the assessor's role in this connection (assessing the improvements, and calculating the adjusted assessment due to the abatement), is a consequence of the grant or denial of the abatement. It is that grant or denial which is being challenged here (and as to which the jurisdictional issue is being examined). Since that denial emanated from the City Council's decision, by resolution, the abatement denial would not be an "action[] or regulation[] with respect to a tax matter of . . . [a] county or municipal official," reviewable by this court under N.J.S.A. 2B:13-2(a)(3).

For these reasons, the court deems it proper to transfer plaintiff's count in its complaints (contained in the Rider to each complaint) as to the wrongful denial of abatement, to the Law Division of the Superior Court in Middlesex County. Should that court deem that the expired Ordinance allows grant/denial of abatement applications, and such denial was proper or improper as to plaintiff, this court can effectuate that decision in connection with its decision on plaintiff's challenges to the valuation of the property for the tax years at issue.

**CONCLUSION**

For the aforementioned reasons, the court transfers the issue of the City Council's abatement denial pursuant to an Ordinance that was never readopted as required by N.J.S.A. 40A:21-4, to the Superior Court, for lack of subject matter jurisdiction. It will however retain jurisdiction over plaintiff's challenges that the assessments (added and regular assessments)

15

exceed the property's true value.  The parties' summary judgment motions are therefore denied without prejudice.

Very truly yours,

Mala Sundar, J.T.C.

16